Finally, having dismissed plaintiff's federal claims, the Court will dismiss plaintiff's remaining state law claims for lack of jurisdiction.

### ORDER

In accordance with the memorandum filed herewith this date,

**IT IS HEREBY ORDERED** that plaintiff's motion to strike is denied.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss, construed as a motion for summary judgment, Counts IV, VII and VIII, is granted as to those Counts.

**IT IS FURTHER ORDERED** that plaintiff's remaining state law claims are dismissed.

**The COUNTY OF BOYD, a Nebraska Political Subdivision, and the Boyd County Local Monitoring Committee, in behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**US ECOLOGY, INC., Defendant.**

No. 4:CV93–3435.

United States District Court,
D. Nebraska.

July 21, 1994.

Patricia A. Knapp, Lincoln, NE, for plaintiff Boyd County Local Monitoring Committee.

Shelley Horak, Boyd County Atty., Butte, NE, for plaintiff Boyd County, Neb.

Steven G. Seglin, Lincoln, NE, for defendant US Ecology, Inc.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Defendant US Ecology, Inc. (US Ecology) has filed a Motion for Summary

Judgment (Filing 12), together with an Index of Evidence Offered in Support of Defendant's Motion for Summary Judgment (Filing 13). The essence of US Ecology's motion is that this case is barred by the doctrine of res judicata. Finding that US Ecology's position is meritorious, I shall grant Defendant's motion for summary judgment in its entirety and enter judgment in favor of Defendant US Ecology and against Plaintiffs, providing that Plaintiffs shall take nothing because application of the doctrine of res judicata bars relitigation of Plaintiffs' claims.

### I.

Before turning to the undisputed facts of this case, I note that US Ecology has requested that I take judicial notice of the pleadings, motions, summary judgment evidence and court orders in *State of Neb. ex rel. E. Benjamin Nelson, Governor v. Central Interstate Low–Level Radioactive Waste Comm'n & US Ecology, Inc.*, (D.Neb.) (No. 4:CV93–3042), granting motion for summary judgment, *reported at* 834 F.Supp. 1205 (D.Neb.1993), *aff'd*, 26 F.3d 77 (1994) [hereinafter *Nelson I*] and *State of Neb. ex rel. E. Benjamin Nelson, Governor v. Central Interstate Low–Level Radioactive Waste Comm'n & US Ecology, Inc.*, (D.Neb.) (No. 4:CV93–3367) [hereinafter *Nelson II*]. Plaintiffs do not object to the court taking judicial notice of the pleadings, motions, summary judgment evidence and court orders in the above-entitled cases. I therefore take judicial notice of the pleadings, motions, summary judgment evidence and court orders in the above-entitled cases pursuant to Federal Rule of Evidence 201(b).

With the foregoing background in mind, I now turn to a discussion of the facts of this case as they relate to US Ecology's motion for summary judgment.

### A.

As required by the Local Rules of Practice, US Ecology has set forth a statement of material facts which it believes are uncontroverted. NELR 56.1(a) ("The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of each material fact as to which the moving party contends there is no genuine issue to be tried and as to each shall identify the specific document or portion thereof or discovery response or deposition testimony (by page and line) which it is claimed establishes the fact."). US Ecology asserts in section II of its Brief in Support of Motion for Summary Judgment that there is no dispute concerning the following facts:

1. On October 8, 1993 the United States District Court for the District of Nebraska rendered the following judgment: *State of Nebraska Ex Rel., E. Benjamin Nelson, Governor v. Central Interstate Low–Level Radioactive Waste Commission and US Ecology, Inc.*, 834 F.Supp. 1205 (D.Neb.1993) ("*Nelson I* "). Def.'s Ex. 1.

2. On December 3, 1993 the United States District Court for the District of Nebraska rendered the following judgment: *State of Nebraska Ex Rel., E. Benjamin Nelson, Governor v. Central Interstate Low–Level Radioactive Waste Commission and US Ecology, Inc.*, No. 4:CV93–3367 (D.Neb. Slip Op. Dec. 3, 1993) ("*Nelson II* "). Def.'s Ex. 2.

3. In *Nelson I* the Court entered a separate judgment providing that Plaintiff would take nothing because the action was barred by the applicable limitations period, and by the equitable doctrines of estoppel and laches. *Nelson II*, Judge Kopf Memorandum dated December 3, 1993 at p. 6. [*sic*].[1] Def.'s Ex. 1.

4. In *Nelson II* the Court entered a separate judgment providing that Plaintiff would take nothing because the application of the doctrine of res judicata barred relitigation of Plaintiff's claims. *Nelson II*, Judge Kopf Memorandum dated December 3, 1993 at p. 13. Def.'s Ex. 2.

5. In *Nelson I* and *Nelson II* the plaintiffs were the Governor of the State of Nebraska, E. Benjamin Nelson, as *parens*

---

1. The proper reference is to the separate judgment which was entered in *Nelson I* on October 8, 1993.

*patriae* on behalf of the State of Nebraska and the Citizens of Boyd County. *Nelson I,* Judge Kopf Memorandum dated October 8, 1993. Def.'s Exs. 1 and 2.

6. In *Nelson I* and *Nelson II* the defendants were US Ecology, Inc. and the Central Interstate Low–Level Radioactive Waste Commission. Def.'s Ex. [*sic* ] 1 and 2.

7. The claims raised in the plaintiffs' petition in this action are based on the same factual predicate and arise out of the same nucleus of operative facts, i.e. complaints about site selection as it relates to the principle of community consent, as advanced in *Nelson I* and *Nelson II.* Complaints and summary judgment evidence in *Nelson I* and *Nelson II.*

8. Substantially the same evidence as that offered in *Nelson I* and *Nelson II* governs the issues of fraud and negligence raised in plaintiffs' petition. Summary judgment evidence in *Nelson I* and *Nelson II.*

9. In the present case the plaintiffs, Boyd County, Boyd County Local Monitoring Committee and Citizens of Boyd County, are in privity with the plaintiff, State of Nebraska, ex Rel. E. Benjamin Nelson, Governor, who brought the claims in *Nelson I and Nelson II* as *parens patriae,* on behalf of the State of Nebraska and the citizens of Boyd County. Complaints, summary judgment evidence in *Nelson I* and *Nelson II* and Def.'s Exs. 1 and 2.

(Def.'s Br.Supp.Mot.Summ.J. 3–5.)

Plaintiffs have not complied with the Local Rules of Practice. Specifically, Plaintiffs have failed to comply with NELR 56.1(b), which requires that:

[any party opposing] a motion· for summary judgment shall set forth in its opposing brief a separate statement of each material fact as to which it is contended there exists a genuine issue to be tried and as to each shall identify the specific document or discovery response or deposition testimony (by page and line) which it is claimed establishes the issue....

Plaintiffs failed to provide me with a separate statement of the disputed material facts and failed to give me any citation to an evidentia-ry predicate for any assertion of a dispute of material fact. It is clear from their brief, however, that Plaintiffs believe: (1) that the doctrine of res judicata does not apply because the claims asserted in this case were not raised, nor could they have been raised, by the State of Nebraska in *Nelson I* or *Nelson II,* and (2) that there is no "privity" between the State of Nebraska in *Nelson I* and *Nelson II* and Plaintiffs in this case.

After carefully considering US Ecology's evidentiary submission and the briefs of all parties, I conclude that the uncontroverted material facts set forth by US Ecology in its brief are the material facts for which there is no factual dispute. Based upon Plaintiffs' brief, I conclude that only two legal questions remain for resolution by this court:

1. Were the claims asserted in this case raised, or could they have been raised, by the State of Nebraska in *Nelson I* or *Nelson II?*

2. Does privity exist between the plaintiff in *Nelson I* and *Nelson II* and Plaintiffs in this case?

### B.

Before addressing the legal issues which confront the court, it is appropriate to discuss more fully the prior litigation. It is then helpful to compare the issues raised in the prior litigation with the issues raised in this case.

The effort to locate a regional low-level radioactive waste disposal facility in Nebraska has prompted a good deal of litigation. *See, e.g., Concerned Citizens of Neb. v. United States Nuclear Regulatory Comm'n,* 970 F.2d 421· (8th Cir.1992) *aff'g in relevant part* the decision of the United States District Court for the District of Nebraska dismissing a complaint by an unincorporated nonprofit citizens' organization and four of its members seeking to stop development of a regional low-level radioactive waste disposal facility.

Some Nebraskans, including many in Boyd County, Nebraska, and the present governor of the state, oppose construction of the radioactive waste disposal facility near the community of Butte, in Boyd County, Nebraska. This opposition has resulted in numerous

federal lawsuits seeking to stop or otherwise impede construction of the facility. These efforts have been largely unsuccessful.

### (1)

Nebraska's present governor, E. Benjamin Nelson, filed suit in *Nelson I*, asserting the interests of the State of Nebraska and the residents of Boyd County. Governor Nelson and the State of Nebraska contended that the Central Interstate Low–Level Radioactive Waste Commission (Commission) and its developer, US Ecology, had failed to obtain "community consent," thereby violating a resolution passed and adopted by the Commission and the Low–Level Radioactive Waste Disposal Act adopted by the State of Nebraska to implement the Central Interstate Low–Level Radioactive Waste Compact (Compact). Governor Nelson and the State of Nebraska sought declaratory and injunctive relief.

The Commission and US Ecology argued that the three elements of constitutionally required standing under Article III of the Constitution were not met in *Nelson I*. *Nelson I*, 834 F.Supp. at 1210. The Commission and US Ecology argued that the State of Nebraska and Governor Nelson lacked standing because they had failed to show: (1) injury in fact, (2) causation, or (3) redressability. *Id.*

I subsequently found that Governor Nelson and the State of Nebraska had *parens patriae* [2] standing to bring this action, holding that:

> ... However, I believe this is one of the unusual cases where *parens patriae* standing exists. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982).
>
> When the Amended Complaint is viewed in its entirety and given a liberal construction, it is apparent that the State of Nebraska is alleging that the residents of Boyd County, Nebraska, and the State of Nebraska, as a member of the Compact, will be forced to accept low-level radioactive waste to the detriment of the health and welfare of residents of Boyd County, Nebraska, and the sovereignty of the State of Nebraska, and that such a threat is real and now present. Accordingly, although *parens patriae* standing is not demonstrated with the clarity I would prefer, I believe the showing which has been made is sufficient, if only minimally so.

*Id.* at 1210–11.

I then determined that the action brought by Governor Nelson and the State of Nebraska against the Commission and US Ecology in *Nelson I* was time barred because it was not filed within the 60–day period set forth in the Compact for challenging the Commission's final decision and because the equitable doctrines of estoppel and laches also barred the action. Governor Nelson and the State of Nebraska appealed, and on June 13, 1994, the United States Court of Appeals for the Eighth Circuit affirmed my decision to grant summary judgment in favor of the Commission and US Ecology in *Nelson I*.[3]

### (2)

In *Nelson II*, Nebraska Governor E. Benjamin Nelson filed suit against the same parties involved in *Nelson I*. The second suit was virtually identical to the first except that the plaintiff attempted to avoid the time bar, and the related application of equitable estoppel and laches, by asserting that the developer proposed to downsize the waste disposal site and that such action constituted another final reviewable decision under the Compact. On December 3, 1993, I granted summary judgment in favor of defendants in this second action on the grounds of res judicata. No appeal was perfected.

### (3)

This lawsuit began in state court. It was filed in the district court of Boyd County, Nebraska, on December 21, 1993, less than 20 days after I granted the summary judgment in *Nelson II*. (Filing 1 Ex. A.) On December 30, 1993, US Ecology removed the action to this court, (Filing 1), asserting that this court had both diversity and federal

---

2. *"Parens patriae"* literally means "parent of the country." *Black's Law Dictionary* 1114 (6th ed. 1990).

3. A petition for rehearing en banc filed by Governor Nelson and the State of Nebraska has not yet been ruled on by the court of appeals.

question jurisdiction. On February 28, 1994, I found that this court had diversity-of-citizenship jurisdiction and denied Plaintiffs' motion to remand.[4] (Filing 8.)

This action is not brought by private citizens; rather, it is brought by two public entities. The County of Boyd is a Nebraska political subdivision. *See, e.g.,* Neb.Rev.Stat. §§ 22–108, 23–101 (Reissue 1991). As such, Boyd County has the right to sue and be sued, to plead and be impleaded, and to defend and be defended against in any court having jurisdiction of the subject matter. *Id.* at § 23–101. According to the petition[5] filed in state court, Boyd County, Nebraska, "exercises its powers by and through the Boyd County Board of Supervisors established as a county government under their township organization." (Filing 1 Ex. A ¶ 1.) *See* Neb. Rev.Stat. § 23–201 *et seq.* (Reissue 1991).

The Boyd County Local Monitoring Committee is also an entity created by state law. Neb.Rev.Stat. § 81–15,101.01 (1992 Cum. Supp.). The monitoring committee was authorized pursuant to the Low–Level Radioactive Waste Disposal Act adopted by the State of Nebraska "in furtherance of its responsibility to cooperate and coordinate with the Central Interstate Low–Level Radioactive Waste Compact Commission." Neb.Rev. Stat. § 81–1579 *et seq.* The Boyd County Local Monitoring Committee is comprised of ten members, two from the municipalities which have zoning jurisdiction within 15 miles of the proposed site, or, if there are no such municipalities, from the municipality in closest proximity to the proposed site; two from the county in which the low-level radioactive waste disposal facility is proposed to be located; two from the local natural resources district; and four members, appointed by the governor, representing various interests such as conservation, and agriculture and fire protection. Neb.Rev.Stat. 81–15,-101.01(3); (Filing 1 Ex. A ¶ 2). The purpose of the local monitoring committee was to "represent the citizens of the proposed site areas and maintain communication with the developer and the department to assure protection of public health and safety and the protection of the air, land, and water resources of the area." *Id.* at § 81–15,101.-01(1)(b).[6]

### (4)

Although not certified as such by this court, the action Plaintiffs commenced is nominally a class action consisting "of all governmental entities in Boyd County and all citizens of Boyd County." (Filing 1 Attach. A ¶ 4.) The action is brought against US Ecology inasmuch it "has been seeking to site a low-level radioactive waste disposal facility in the State of Nebraska [in Boyd County] for the purpose of selling waste disposal services at said facility." (*Id.* ¶ 3.)

Although there are two causes of action, it is obvious that both are predicated upon the same complaint. In fact the petition specifically claims that the actions are "inextricably linked". The petition asserts that: US Ecology "has made repeated oral and written assertions, representations, and statements of fact to the effect that it will not site its facility in a community without that community's consent"; that these representations were not true; and that these "representations regarding community consent are inextricably linked" to the allegations contained in the first and second causes of action. (*Id.* ¶ 33.)

In the first cause of action, it is claimed that: (a) US Ecology "made repeated oral and written representations to the citizens of this state, including the citizens of Boyd County ... that an initial expression of interest from a county board would not bind a county to hosting" a waste disposal site; (b)

---

**4.** I found it unnecessary to also determine whether this court had federal question jurisdiction.

**5.** In state pleading practice the pleading which initiates a civil action is called a petition rather than a complaint. Therefore, I use the word "petition" throughout this opinion because that is the style used on the pleading which started this case.

**6.** Although it is far from clear that a local monitoring committee has the capacity to sue or be sued under state law, I have assumed for purposes of this summary judgment motion only that the local monitoring committee in this case has the power to sue.

said representations were false in that an initial expression of interest from the Boyd County Board of Supervisors has bound the county to hosting the site; (c) the representations were made fraudulently with "the intention that the Boyd County Board of Supervisors and the citizens it represents would rely on them"; (d) the citizens of Boyd County in general and the Boyd County Board of Supervisors in particular did in fact rely on the representations; and (e) said conduct caused damage to Boyd County and the citizens it represents including "increased costs of law enforcement, increased costs for emergency response providers, and the costs of a grand jury investigation," together with expenses incurred by the Boyd County Local Monitoring Committee such as "lost income due to the work required and the time involved in fulfilling their statutory obligation...." (*Id.* ¶¶ 25–31.)

The second cause of action is similar to the first. It alleges that notwithstanding its representations about "community consent," US Ecology "does not intend to honor its 'Commitment to Nebraska' that it will not site its facility in a community without that community's consent." (*Id.* ¶¶ 33, 46.) The second cause of action also alleges that US Ecology's representations were "known or reasonably should have been known by [US Ecology] to be untrue, deceptive, or misleading," and that such statements were made for the purpose of selling the proposed facility and its waste-disposal services to the public, said communication being disseminated in newspapers, reports, posters, brochures and letters. (*Id.* ¶¶ 47–49.)

Plaintiffs claim damages as a result of the second cause of action that are nearly identical to those claimed in the first cause of action. (*Id.* ¶¶ 31, 50.) Moreover, Plaintiffs further allege as a result of US Ecology's wrongful conduct that:

> ... Plaintiffs and the citizens they represent have suffered financial burdens associated with efforts to support grass roots organizations, as well as business and income losses resulting from economic boycotts stimulated by this process. Local social conflicts and interpersonal animosities have become more widespread and

> rancorous.... Community social structures have been negatively affected by the tensions and contentiousness resulting from the proposal.... There has been a significant deterioration of the quality of life and social well-being of area residents. The social fabric of Boyd County has been seriously disrupted....

(*Id.* ¶ 50.)

The petition concludes with a general prayer for actual damages, damages for pain and suffering, mental distress and social disruption to Boyd County, and punitive damages to be paid to the county and appropriated exclusively to the use and support of the common schools of Boyd County, Nebraska. (*Id.* at 18.)

In summary, the essence of both causes of action is the claim that US Ecology's failed to achieve community consent for the waste disposal facility and such failure caused diffuse "social fabric" damages. Indeed, in the second-to-last paragraph of the petition, Plaintiffs conclude by stating that "*[a]ll of these social effects* could be anticipated by [US Ecology] as a direct and proximate result of its efforts to site a low-level radioactive waste facility in a community *without that community's consent.*" (*Id.* ¶ 50 (emphasis added).)

## II.

■ The doctrine of res judicata bars claims where one suit follows another if the following elements are met: (1) a prior judgment was rendered by a court of competent jurisdiction; (2) the prior decision was a final judgment on the merits; (3) the same cause of action is involved in all cases; and (4) the same parties or those in privity are involved in all cases. *See, e.g., Headley v. Bacon,* 828 F.2d 1272, 1274 (8th Cir.1987) (citing *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)); *King v. Hoover Group, Inc.,* 958 F.2d 219, 222 (8th Cir.1992) (applying the same test under Nebraska law). Res judicata precludes the relitigation of a claim on grounds that were raised, or could have been raised, in the prior action. *Lane v. Peterson,* 899 F.2d 737, 741 (8th Cir.), *cert. denied,* 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990).

Each of the four elements for application of res judicata have been established by US Ecology. I come to this conclusion for the following reasons.

### A.

The first question is whether the prior judgments in *Nelson I* and *Nelson II* were rendered by a court of competent jurisdiction. Plaintiffs do not claim that this court lacked jurisdiction to enter judgment in *Nelson I* and *Nelson II*.

I specifically found in *Nelson I* that the court had so-called "federal question" jurisdiction under 28 U.S.C. § 1331. 834 F.Supp. at 1210 (construction of the provisions of the Central Interstate Low–Level Radioactive Waste Compact adopted by Congress under the Compact Clause of the Constitution provided a federal question). The same jurisdictional predicate existed in *Nelson II.*

US Ecology has therefore satisfied the first element for application of the doctrine of res judicata.

### B.

■ The next issue is whether this court's prior judgments in *Nelson I* and *Nelson II* were final judgments on the merits. Once again, Plaintiffs do not challenge US Ecology on this point.

This court entered separate and specific judgments in *Nelson I* and *Nelson II*. In the first judgment this court concluded that the plaintiff should "take nothing" because the action was "barred by the applicable limitation period and by the equitable doctrines of estoppel and laches." In the second judgment, this court again found that the plaintiff should "take nothing" as "application of the doctrine of res judicata bars relitigation of Plaintiff's claims."

The entry of a separate judgment stating that "all relief shall be denied," or equivalent words, constitutes a final judgment. Fed. R.Civ.P. 58, 79(b); *Ruple v. City of Vermillion,* 714 F.2d 860, 861–62 (8th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984) (for purposes of doctrine of res judicata a summary judgment is just as binding as a judgment entered after trial of the facts).

■ Moreover, the previous judgments were "on the merits". Indeed, any dismissal "operates as an adjudication upon the merits" unless the court specifies otherwise, or unless the dismissal is based upon a lack of jurisdiction, improper venue, or failure to join a party. Fed.R.Civ.P. 41(b). *See also Myers v. Bull,* 599 F.2d 863, 865 (8th Cir.), *cert. denied,* 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138 (1979) (plaintiff's attempt to resurrect two claims raised in previous complaint was barred by res judicata effect of district court's previous decision that claims were brought outside of the period of the applicable statute of limitations); *Cannon v. Loyola Univ. of Chicago,* 784 F.2d 777, 781 (7th Cir.1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987) (disposition of applicant's actions under Title IX of Education Amendments of 1972 and 42 U.S.C. § 1983 on grounds of laches was a judgment on the merits for res judicata purposes).

US Ecology has therefore satisfied the second element for application of the doctrine of res judicata.

### C.

■ The third element of res judicata deals with the question of whether there is sufficient similarity in the causes of action in the prior and subsequent suits to allow application of the doctrine. Plaintiffs contend that the "causes of action" involved in this case were not asserted in *Nelson I* and *Nelson II*. I disagree because although Plaintiffs have "dressed up" this case differently than the previous litigation, the cases are indistinguishable for res judicata purposes.

■ At least in this circuit, the phrase "cause of action" no longer has the "rather rigid and technical construction" that it once had at common law. *Ruple,* 714 F.2d at 861. As Chief Judge Arnold has stated, "if a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action, [it is now said that] the two cases are really the same 'claim' or 'cause of action' for purposes of res

judicata." *Id.* *See also Lane*, 899 F.2d at 743; *Murphy v. Jones*, 877 F.2d 682, 684 (8th Cir.1989); *Poe v. John Deere Co.*, 695 F.2d 1103, 1105–06 (8th Cir.1982).

The phrase "cause of action" is no longer given its technical common-law meaning because the more liberal pleading rules are intended to encourage resolution of related complaints in one case, although those complaints might, under common law precepts, be viewed as technically separate causes of action. *Ruple*, 714 F.2d at 861. Because of this liberality, "there is no reason to give a claimant more than one fair chance to present the substance of his or her case." *Id.*

The issue brought by Governor Nelson and the State of Nebraska in *Nelson I* and *Nelson II* was whether the Compact Commission and US Ecology had "failed to obtain 'community consent,' thereby violating a resolution passed and adopted by the Commission, and violating the Low–Level Radioactive Waste Disposal Act adopted by the State of Nebraska to implement the Compact." *Nelson I*, 834 F.Supp. at 1208. The "inextricably linked" first and second and causes of action in this case, (Filing 1 Ex. A ¶ 33), are based upon US Ecology's alleged "efforts to site a low-level radioactive waste facility in a community without that community's consent." (*Id.* ¶ 50.)

Governor Nelson and the State of Nebraska complained in *Nelson I* and *Nelson II* that the Compact Commission and US Ecology had agreed to achieve "community consent" but had failed to do so, thereby violating a Compact resolution and the laws of the State of Nebraska. The same allegation is made in this lawsuit; that is, US Ecology fraudulently or negligently misrepresented that it would achieve community consent but did not do so. This lack of community consent is the "soul" of Plaintiffs' complaint in this case. (Filing 1 Attach. A ¶¶ 5, 10, 23, 33–35, 37–38, 40–41, 43–46, 48–50.)

In summary, no matter how one chooses to style the "causes of action," this case is nonetheless identical to *Nelson I* and *Nelson II* because all three cases are based "upon the same factual predicate" or "the same nucleus of operative facts." *Ruple*, 714 F.2d at 861. That the plaintiff did not seek damages in

*Nelson I* and *Nelson II* is not significant. As pointed out later, the plaintiff in *Nelson I* and *Nelson II* could have asserted the same damages which Plaintiffs in this case now assert. Res judicata precludes the relitigation of a claim on grounds that were raised, or could have been raised, in the prior action. *Lane*, 899 F.2d at 741. US Ecology has therefore satisfied the third element for application of the doctrine of res judicata.

### D.

■ A more unusual, but ultimately no more difficult, aspect of this case involves "privity." Boyd County and the Boyd County Local Monitoring Committee are obviously not the same parties as Governor Nelson and the State of Nebraska. Of course, the law does not require that they be the same in order for the doctrine of res judicata to apply so long as the parties are "in privity."

■ For some time now, "privity," like its common-law counterpart "cause of action," has been understood in nontechnical terms. The older common-law understanding of privity has been dropped for purposes of the application of the modern doctrine of res judicata. As Professor Wright has observed, as the "preclusive effects of judgments have expanded to include nonparties in more and more situations, however, it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper. Modern decisions search directly for circumstances that justify preclusion." 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4449 at 418–19 (1981) (footnotes omitted) (citing, among other cases, *Gerrard v. Larsen*, 517 F.2d 1127, 1133–34 (8th Cir.1975)). Thus, "privity" may exist where the parties in the first action are "so closely related" to the parties in the second action that their interests may be said to be "nearly identical", such that it "is fair to treat them as the same parties for purposes of determining the preclusive effect of the [prior] judgment." *Ruple*, 714 F.2d at 862 (holding that the fact that some of the parties in the subsequent suit were not parties in the prior state-court action did not preclude application of res judicata because the newly

named parties were in privity with those who were named in the state-court action).

Or, as the court in *Headley,* 828 F.2d at 1277, stated, "Our focus is not the nature of the relationship between [the parties] in general, but the identity of their interests in" the first litigation (holding that interests of police officers, in their individual capacity, in civil-rights action were not sufficiently congruent to those of their employer, the city, in prior Title VII action for police officers to be in privity with the city for purposes of the doctrine of res judicata).

To use the language of *Ruple,* I find and conclude that Plaintiffs in this case "are so closely related" to Governor Nelson and the State of Nebraska in *Nelson I* and *Nelson II* and "their interests so nearly identical" that it "is fair to treat them as the same parties for purposes of determining the preclusive effect" of *Nelson I* and *Nelson II* on the present action. *Ruple,* 714 F.2d at 862. US Ecology has therefore established the fourth element necessary for application of the doctrine of res judicata. I come to this conclusion for the following reasons.

(1)

It is obvious that Governor Nelson and the State of Nebraska are "closely related" to the County of Boyd, Nebraska, and the Boyd County Local Monitoring Committee, Plaintiffs in this case. All the named plaintiffs in *Nelson I, Nelson II* and in this case are political bodies, rather than private individuals, with the exception of Governor Nelson, who sued in his official capacity (hence the designation "ex rel.").[7] The three parties thus share a common political bond—the laws of the State of Nebraska have charged them with representing their constituents.

Moreover, in *Nelson I,* I found that the sovereign interests of the State of Nebraska *and* the interests of Boyd County, Nebraska, were expressly being asserted by Governor Nelson and the State of Nebraska, since it was claimed that "the residents of Boyd County, Nebraska, and the State of Nebraska, as a member of the Compact, will be forced to accept low-level radioactive waste to *the detriment of the health and welfare of residents of Boyd County, Nebraska* and the sovereignty of the State of Nebraska...." *Nelson I,* 834 F.Supp. at 1210 (emphasis added). Thus, Governor Nelson and the State of Nebraska "closely related" themselves to the political-subdivision plaintiffs in this case by asserting the interests of Boyd County, Nebraska, and its citizens.

There is also *evidentiary* support in the record before me that the Plaintiffs in this case, and Governor Nelson and the State of Nebraska, were "closely related". Plaintiffs' lead counsel in this case has been Patricia A. Knapp, who originally signed the petition as counsel for the Boyd County Local Monitoring Committee. (Filing 1 Ex. A at 19.) Since then it has been Ms. Knapp who has taken the laboring oar in prosecuting this case for Plaintiffs.

For example, Ms. Knapp signed the motion to remand while the Boyd County attorney did not. (Filing 4.) Ms. Knapp also signed the Form 35 Report of Parties' Planning Meeting regarding discovery, while the Boyd County attorney did not. (Filing 9.) Indeed, Ms. Knapp signed Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment, while the Boyd County attorney did not.

On October 4, 1993, Ms. Knapp filed a motion for leave to appear as amicus curiae in *Nelson I.* (Filing 40 in *Nelson I.*) In that motion Ms. Knapp sought to acquaint me with a variety of facts, including presenting me with transcripts of hearings before a state-court judge. (*Id.* ¶ 7.) Attached to Ms. Knapp's motion were various exhibits she wanted me to consider. (*Id.* Exs. 1, 2.) Ms. Knapp sought leave to respond to my announcement that I intended to grant Defendants' motion for summary judgment in *Nelson I.*[8]

---

7. The "supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed and the affairs of the state efficiently and economically administered." Neb. Const. art. IV, § 6, *reprinted in* Vol. 2 Neb. Rev.Stat. (Reissue 1989).

8. Because the time for trial was fast approaching, I announced at oral argument that I would grant Defendants' motion for summary judgment in *Nelson I,* but the memorandum opinion and formal judgment would not be entered until sometime later. Ms. Knapp filed her motion for

Among other things, Ms. Knapp argued in her motion that my announcement of my decision regarding the motions for summary judgment submitted by the Commission and US Ecology "would deprive [the Boyd County Local Monitoring Committee] of the opportunity to defend the community's right to 'consent'. . . ." (*Id.* ¶ 13.) I denied Ms. Knapp's motion to appear as amicus curiae, (Filing 41 in *Nelson I.*), because the motion was not timely, because it sought to present evidence to the court without a petition for intervention, and because Ms. Knapp's evidence regarding the prior state-court litigation was not relevant to the question then before me.

From Ms. Knapp's involvement, it is *apparent as a matter of fact,* that Governor Nelson, the State of Nebraska, and Plaintiffs in this case were "closely related" at the time of *Nelson I.* Indeed, Ms. Knapp's concern when she sought to appear as amicus curiae was that my decision in *Nelson I* "would deprive [the Boyd County Local Monitoring Committee] of the opportunity to defend the community's right to 'consent'. . . ." Thus, not only did lead counsel in this case recognize that disposition of *Nelson I* would resolve the so-called "community consent" issue adversely to one of the present plaintiffs, but lead counsel took affirmative steps to assist the plaintiff in *Nelson I* in opposing the motions for summary judgment in that case. In turn, this somewhat exceptional factual circumstance suggests a coordinated litigation strategy between the plaintiff in *Nelson I* and *Nelson II* and the present Plaintiffs.

This case is very similar to *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958), where prior litigation by the State of Washington was held to have bound its citizens in subsequent litigation. The State of Washington had opposed issuance of a Federal Power Commission dam license to the City of Tacoma. The state argued that its fishery resources would be harmed if the City of Tacoma were permitted to obtain a license and operate the dam. The State of Washington

litigated first in an administrative context and later in the United States Court of Appeals for the Ninth Circuit, but ultimately lost the case.

The City of Tacoma then brought an action against its own taxpayers for declaratory judgment of the validity of the bonds to finance the dam project. A state court enjoined the city from proceeding with the project because the court concluded that the City of Tacoma was not authorized to take or harm state property. The United States Supreme Court granted certiorari and reversed.

The Court held that the prior judgment "was effective, not only against the State, but also against its citizens, including the taxpayers of Tacoma, for they, in their common public rights as citizens of the State, were represented by the State in those proceedings, and, like it, were bound by the judgment." *Id.* at 340–41, 78 S.Ct. at 1221.

Like the taxpayers of the City of Tacoma who were previously represented by the State of Washington, the public entities in this case (and their citizens) were represented by the State of Nebraska and Governor Nelson in *Nelson I* and *Nelson II.*

In summary, I conclude that the plaintiff in *Nelson I* and *Nelson II* and Plaintiffs in this case were and are "closely related" because: (1) the plaintiffs in all three actions (the Governor of the State of Nebraska or political subdivisions thereof) are political entities of the state, sharing common political bonds; (2) no private parties appear as named plaintiffs in *Nelson I, Nelson II* or in this case; (3) the plaintiff in *Nelson I* and *Nelson II* specifically asserted the interests of one of the Plaintiffs in this case (Boyd County, Nebraska) in bringing *Nelson I* and *Nelson II;* and (4) lead counsel for Plaintiffs in this case appeared in an effort to oppose the granting of the motions for summary judgment in *Nelson I,* asserting that the decision in *Nelson I* would resolve the issue of "community consent" adversely to one of the Plaintiffs in this case (the Boyd County Local Monitoring Committee).

leave to appear as amicus curiae between the time of my announcement at oral argument and

the date my memorandum opinion and judgment were issued.

(2)

I turn next to the issue of whether the plaintiff in *Nelson I* and *Nelson II* and Plaintiffs in this case had identical or nearly identical interests. I conclude that their interests are identical, or nearly so, both legally and practically.

The United States Court of Appeals for the Tenth Circuit recently reiterated that "when a state litigates common public rights, the citizens of that state are represented in such litigation by the state and are bound by the judgment." *Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464, 1470 (10th Cir.1993) (citing *Washington v. Washington State Comm'l Passenger Fishing Vessel Ass'n,* 443 U.S. 658, 692 n. 32, 99 S.Ct. 3055, 3077 n. 32, 61 L.Ed.2d 823 (1979); *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958)).

In *Satsky* individual Colorado property owners brought an action against a mine owner seeking to recover damages arising from hazardous waste products produced by the mine. The State of Colorado had previously litigated a similar issue, and it had entered into a consent decree on the subject. The Court of Appeals was thus confronted with the question of whether res judicata should apply to bar the subsequent litigation.

The *Satsky* court wrote that "the extent to which plaintiffs are barred ... turns on the nature of the rights asserted by them." *Id.* at 1470. On one hand, if "the claims are for injuries to interests which all citizens hold in common" and for which the state had already litigated, then the prior judgment would constitute a bar. *Id.* This would be so even though the plaintiffs in the *Satsky* litigation were private individuals because the prior litigation involved the assertion of public rights by the State of Colorado under the doctrine of *parens patriae* standing. *Id.* at 1469–70. On the other hand, if the *Satsky* litigation involved "injuries to purely private interests" which the state could not have raised in the prior litigation, then the claims were not barred. *Id.* at 1470.

Since the *Satsky* litigation involved claims by private individuals and the court of appeals was uncertain whether those individuals were asserting "purely private interests" or "injuries to interests which all citizens hold in common," the court remanded the case to the district court to determine which claims asserted by the plaintiffs were private and which were based on common public rights. *Id.*

The analysis suggested by the *Satsky* court is helpful here.[9] The *Satsky* court keyed on the question of whether the prior and subsequent suits were "for injuries to interests which all citizens hold in common." *Id.* at 1470. If the prior and subsequent suits were for injuries which all citizens held in common, then the *Satsky* court believed that application of the doctrine of res judicata was appropriate. *Id.* I turn to that issue now.

In *Nelson I,* I found that Governor Nelson and the State of Nebraska had standing because that case was "one of the unusual cases where *parens patriae* standing exists." 834 F.Supp. at 1210. Liberally construing the amended complaint, I found that *parens patriae* standing existed because it was apparent to me that given the alleged lack of "community consent":

> ... the State of Nebraska is alleging that the residents of Boyd County, Nebraska, and the State of Nebraska, as a member of the Compact, will be forced to accept low-level radioactive waste to the detriment of the health and welfare of residents of Boyd County, Nebraska, and the sovereignty of the State of Nebraska....

*Id.*

The principal objectives of *Nelson I* and *Nelson II* were to preserve "the health and

---

9. I pause here to note that unlike *Satsky* there is no need for additional fact finding on the issue of what interests or damages are truly being asserted by Plaintiffs in this case. Plaintiffs have been given a full and fair opportunity to present whatever facts they thought proper. As noted earlier, Plaintiffs have not claimed there are any material facts in dispute, and Plaintiffs have presented no evidence. *See* Fed.R.Civ.P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."). Specifically, there has been no evidence presented to suggest that Plaintiffs' claims in this case involve purely private claims.

welfare of residents of Boyd County, Nebraska" and the concept of "community consent". These general health-and-welfare concerns of the residents of an entire county, coupled with the state-wide concern for "community consent", first litigated in *Nelson I* and *Nelson II*, are clearly "injuries to interests which all citizens hold in common." *Satsky*, 7 F.3d at 1470.

Once again, *Nelson I* and *Nelson II* are like *City of Tacoma*. In *City of Tacoma*, the "common public rights" were the fishery resources of the State of Washington. In *Nelson I* and *Nelson II*, the common public right involved "community consent" and "the health and welfare of residents of Boyd County, Nebraska," occasioned by the threat of a radioactive waste facility.

Having determined that vindication of a common public right was sought in *Nelson I* and *Nelson II*, the question then becomes whether vindication of a similar public right is sought in this case. In this regard two things should be observed.

First, as previously indicated, the same nucleus of operative facts, i.e., "community consent," formed the factual predicate for *Nelson I* and *Nelson II* as well as the factual predicate for this case. The concept of "community consent", to the extent that it has any enforceable legal significance, is a right of the public negotiated and obtained by the State of Nebraska pursuant to its membership in the federally chartered Compact. *Nelson I*, 834 F.Supp. at 1208. "Community consent" simply has none of the attributes of "purely private interests", and to the extent it has legal relevance it is by definition a right claimed by the State of Nebraska *for all its citizens*.

Second, Plaintiffs do not seek to recover for injury to private rights, but for the injury to "the social fabric" of Boyd County, Nebraska. This is the same injury for which Governor Nelson sought relief in *Nelson I* and *Nelson II*.

Plaintiffs have adduced absolutely no evidence that they claim particularized damage to private individuals. Moreover, it is apparent from an examination of Plaintiffs' petition that the petition raises only the issue of communal damage.

For example, damage in this case includes "increased costs of law enforcement, increased costs for emergency response providers, and the costs of a grand jury investigation," (Filing 1 Attach. A ¶ 31), together with such other damage as "losses resulting from economic boycotts stimulated by this process," damage associated with "social conflicts and interpersonal animosities," damage to "social structures," damage associated with the "deterioration of the quality of life and social well-being of area residents," and damage associated with the disruption of the "social fabric of Boyd County." (*Id.* ¶ 50.)

The closest Plaintiffs come to particularizing a purely private claim of damage is in the allegation that "the members of the Boyd County Local Monitoring Committee have incurred expenses and have lost income due to the work required and the time involved in fulfilling their statutory obligation to monitor the Defendant's [US Ecology's] site selection process." (Filing 1 Attach. A ¶¶ 31, 50.) But even these damages are not pled as "purely private interests," but are pled in the context of the damage to the entire "social fabric of Boyd County, Nebraska."

While it is conceivable that under certain circumstances (none of which are present here) a "purely private interest" might be involved if a private individual were to pursue such a claim for expenses, when such a claim is inextricably interwoven with communal damage to the "social fabric" of an entire county, such stray allegations should not be taken out of context to defeat application of the principle of res judicata, particularly where no private individual appears as a named party.[10] *See Southwest Airlines Co. v. Texas Int'l Airlines*, 546 F.2d 84, 99–101 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct.

---

**10.** In this regard, I hasten to add that the court has not certified this case as a class action, and Plaintiffs have specifically asked me to defer consideration of the certification question until after resolution of the motion for summary judgment.

(Filing 23.) Thus, concerns about inadvertent claim bars to private individuals by virtue of a class-action-certification order are not present in this case.

117, 54 L.Ed.2d 93 (1977) (applying doctrine of res judicata and holding that airlines were bound by prior litigation, even though they were not parties, as the City of Dallas represented the only legal interests the airlines possessed in the prior litigation) (Judge Wisdom wrote that a "party must show more than a special pecuniary interest when attempting to vindicate the breach of a public duty already litigated by a governmental agency. Permission to relitigate appears reserved for the private plaintiff who would vindicate a breach of duty owed specifically to the plaintiff. . . ."). *Id.* at 100.

■ In summary, I find that the interests of the plaintiff in *Nelson I* and *Nelson II* and the interests of Plaintiffs in this case are (and were) virtually identical because: (1) a significant part of the harm sought to be remedied in *Nelson I* and *Nelson II* was harm to the "health and welfare of residents of Boyd County, Nebraska," *Nelson I*, 834 F.Supp. at 1210, and the harm sought to be remedied in this case is essentially the same harm, injury to the "social fabric of Boyd County, Nebraska;" and (2) any right to "community consent" asserted by Plaintiffs in this case was obtained by the State of Nebraska for all of its citizens as part of its participation in the federally chartered Compact, and thus interference with the right of "community consent" does not harm "purely private interests", but rather the "public interest" of all the citizens of Nebraska, and it is this public interest which Plaintiffs now assert that the plaintiff in *Nelson I* and *Nelson II* also sought to vindicate.

### (3)

■ A number of additional observations regarding the issue of "privity" are appropriate.

First, there is no doubt that if Governor Nelson and the State of Nebraska had brought the causes of action articulated in this case, this court would have had jurisdiction. Although the jurisdictional predicate in *Nelson I* and *Nelson II* was this court's federal question jurisdiction, this court could have, and very likely would have, exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

Second, Plaintiffs in this case argue that because Governor Nelson and the State of Nebraska were found to have *parens patriae* standing in *Nelson I*, Governor Nelson could not have brought an action for damages. Plaintiffs are simply wrong on this point.

It is true that *parens patriae* standing would not permit an entity such as the State of Nebraska, or a person such as Governor Nelson, to bring an action for damages where the essence of the cause of action is one of a breach of duty owed to *individuals* causing *purely personal damages* to those individuals. *See, e.g., People of the State of N.Y. by Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir.1987) (holding that the attorney general of the State of New York, suing as *parens patriae*, could not obtain a treble-damage RICO judgment for specific citizens and consumers of the State of New York). However, as the *Seneci* court recognized, a party having *parens patriae* standing could sue for damages that were separate from the interests of particular individuals. The Second Circuit specifically noted that if the attorney general had sued for "an injury to the general economy of the state, common law *parens patriae* standing would undoubtedly exist." *Id.* (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607, 102 S.Ct. 3260, 3268–69, 73 L.Ed.2d 995 (1982)).

The issue *not* before the court in *Seneci* is precisely the point in this case: Governor Nelson could have asserted the claim of damages now brought by Plaintiffs because the damages now sought by Plaintiffs are diffuse, generalized, "social-fabric" damages unrelated to the purely private interests of individuals. *Parens patriae* standing clearly existed in *Nelson I* for the governor to assert the type of damages now asserted by Plaintiffs in this case. Therefore, cases like *Seneci, see, e.g., State of Cal. v. Frito Lay, Inc.*, 474 F.2d 774, 776–77 (9th Cir.1973), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2291, 36 L.Ed.2d 974 (1973), are not relevant since the complaint in those cases sought to recover monetary damages for injuries suffered by individuals.

### III.

US Ecology has demonstrated with unusual clarity that: (1) a prior judgment was

rendered by a court of competent jurisdiction; (2) the prior judgment was a final decision on the merits; (3) the same cause of action involved in this case was involved in the prior case; and (4) the same parties, or those in privity, are involved in all cases.

Application of the doctrine of res judicata is particularly important in this case because a very important federal interest is at stake. Although perhaps not superficially apparent, what this case is really about is whether the state and its political subdivisions will be compelled to honor their obligations under a Compact which Congress approved pursuant to the Constitution. While the State of Nebraska and its constituent political bodies are entitled to fully and fairly litigate their legitimate claims, they are not entitled to wage what might be characterized as hit-and-run guerilla warfare by filing multiple lawsuits on the same claim in order to frustrate performance of the Compact.

In the words of Chief Judge Arnold of the United States Court of Appeals for the Eighth Circuit, the State of Nebraska and its constituent political bodies are entitled to "one fair chance." *Ruple,* 714 F.2d at 861. They have had that chance.

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment (Filing 12) submitted by defendant US Ecology, Inc., is granted, and summary judgment shall be entered separately, providing that Plaintiffs shall take nothing because application of the doctrine of res judicata bars relitigation of their claims.