**Charles E. JOHNSON, Plaintiff,**

v.

**Dan R. SCHNEIDERHEINZ, Individually and as Sheriff of Merrick County, Nebraska, and Merrick County, Nebraska, Defendants.**

**No. 4:CV95–3141.**

United States District Court,
D. Nebraska.

Jan. 31, 1996.

David T. Schroeder & L. William Kelly, Kelly & Schroeder, Grand Island, NE, for Plaintiff.

Richard L. Boucher & Kim K. Sturzenegger, Boucher Law Firm, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This is a civil rights case brought pursuant to 42 U.S.C. § 1983. Dan R. Schneiderheinz (Sheriff) is the Sheriff of Merrick County, Nebraska. He has been sued by Charles E. Johnson (Mr. Johnson).

The essence of Mr. Johnson's civil rights complaint is that the Sheriff falsely arrested Mr. Johnson, without a warrant and without probable cause, for the crime of aiding and

abetting a second degree murder and aiding and abetting the use of a firearm in commission of the murder. Thereafter, it is claimed that the Sheriff falsely reported to prosecuting authorities facts regarding probable cause. The charges against Mr. Johnson were eventually dropped, and another person was charged and convicted of the crime.

The Sheriff moves for summary judgment (Filing 25) on essentially three grounds: (1) summary judgment should be granted on the merits in that the Sheriff actually possessed probable cause; (2) summary judgment should be granted on the grounds of qualified immunity in that he arguably had probable cause; and (3) summary judgment should be granted on the grounds of claim or issue preclusion arising from the probable cause and preliminary hearings in state court. The Sheriff also moves (Filing 38) to strike certain portions of affidavits submitted by experts for Mr. Johnson.

I will deny the motion for summary judgment. I shall also deny as moot the Sheriff's motion to strike certain portions of affidavits submitted by experts for Mr. Johnson as I have not considered those statements for any purpose.

## I. Factual Dispute Regarding the Merits and Qualified Immunity

This case involves the death of Jerry Carlson (the victim) sometime in the late evening of April 15, 1994, or the early morning of April 16, 1994, on or near Highway 30 between Clarks and Silver Creek, Nebraska. It is undisputed that the Sheriff arrested Mr. Johnson on April 21, 1994, without a warrant, at his place of work. Mr. Johnson was arrested for aiding and abetting second degree murder in violation of Neb.Rev.Stat. § 28–304 (Reissue 1989) and for aiding and abetting the use of a firearm to commit the murder in violation of Neb.Rev.Stat. § 28–1205 (Reissue 1989). Both crimes are felonies under Nebraska law.

The Sheriff asserts alternative arguments. First, he argues that he had probable cause to arrest Mr. Johnson and therefore summary judgment should be granted on the merits. Second, he argues in the alternative that he arguably had probable cause from the perspective of a reasonable police officer, and therefore he is entitled to summary judgment based on the defense of qualified immunity.

I find and conclude that a critical fact is truly in dispute about what the Sheriff actually knew. The Sheriff based his decision to arrest Mr. Johnson in significant part on the fact that a witness allegedly recanted her previous exculpatory statement about Mr. Johnson and then implicated Mr. Johnson. Whether this critical witness actually recanted her exculpation of Mr. Johnson and whether this witness implicated Mr. Johnson is factually in dispute. In a pointed and direct affidavit, the critical witness denies that she made the statements attributed to her by the Sheriff, and in essence suggests that the Sheriff, his deputy and a highway patrolman lied about what she said.

Because what the Sheriff actually knew, as opposed to what he subjectively believed, is critical to a determination of both the merits and the defense of qualified immunity, I must deny the motion for summary judgment on both of the alternative grounds advanced by the Sheriff. *See, e.g., Prokey v. Watkins,* 942 F.2d 67, 73 (1st Cir.1991) (regarding a denial of a motion for summary judgment in civil rights case asserted both on merits and on the defense of qualified immunity which motion turned on the issue of probable cause for arrest, the court held, in affirming the denial of the motion, that if a reasonable police officer's perception of probable cause would differ depending upon what the officer actually knew, there is a factual dispute that must be resolved by a fact finder). *See also Johnson v. Jones,* —— U.S. ——, ——–——, 115 S.Ct. 2151, 2156–57, 132 L.Ed.2d 238 (1995) (factual disputes such as what the defendants actually knew or did which are intertwined with the merits and the defense of qualified immunity are not reviewable by interlocutory appeal); *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) (whether a search was supported by probable cause for qualified immunity purposes is an objective test, but "will often require examination of the information possessed by the searching officials"); *Malley v. Briggs,* 475 U.S. 335, 345–

46, 106 S.Ct. 1092, 1098–99, 89 L.Ed.2d 271 (1985) (whether an officer has qualified immunity in an arrest warrant situation turns on "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause ..."); *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964) (regarding a challenge to the merits of a warrantless arrest, the Court, reversing for a determination of what the officer actually knew, held that the pertinent question is "whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed" (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925))).

## A. Background

With one very significant omission which will be discussed in more detail later, the voluminous evidentiary record (Filing 27 and attached exhibits and Filing 31 and attached exhibits), condensed for the sake of clarity, reveals the following:

1. Rhonda Braun (Braun) and Tom Branting (Branting) reported to authorities that a vehicle was off the side of Highway 30 during the early morning of April 16, 1994. (Filing 27, Ex. 1).

2. Upon investigation Merrick County Sheriff's personnel found the victim in the vehicle. (Filing 27, Ex. 1). The victim was dead. He had been shot and killed by a bullet that apparently passed through the vehicle window and through the driver's seat striking the victim in the shoulder blade. The estimated time of death was 11:45 p.m. on April 15, 1994, although it is unclear when this estimate was made and communicated to the Merrick County Sheriff's office.

3. Rod Williamson (Williamson), a deputy sheriff, interviewed Mr. Johnson on April 17, 1994. (Filing 27, Ex. 3D). Williamson interviewed Mr. Johnson because the victim purportedly dated Mr. Johnson's former wife. Mr. Johnson denied any knowledge of the matter. Mr. Johnson did state that he had been traveling with Branting on Highway 30 at about 11:45 p.m. on April 15, 1994, between Silver Creek and Clarks, Nebraska. Mr. Johnson agreed to take a polygraph examination, and that examination was scheduled for April 19, 1994. The Sheriff was present for at least a part of Williamson's interview with Mr. Johnson.

4. Williamson interviewed Braun on April 18, 1994. (Filing 27, Ex. 3E). She told Williamson that she had been following Mr. Johnson and Branting on Highway 30 between 11:05 p.m. and 11:45 p.m. on April 15, 1994. According to Braun, Johnson was driving and Branting was in the passenger seat. She stated that she had been following Mr. Johnson as she had been dating him, and she wanted to talk with him. Among other things, she stated that she never lost sight of the vehicle that Johnson was driving, that no other vehicles were encountered, and that she did not see any vehicles off the road until she and Branting returned together along Highway 30 upon leaving Mr. Johnson in Clarks, Nebraska. It does not appear that the Sheriff was present for this interview. However, the Sheriff was aware of the exculpatory nature of the first interview prior to the second interview of Braun (described later) which second interview took place on April 19, 1994. (Filing 27, Ex. 1 ¶ 7(c) & (d)).

5. On April 19, 1994, at about 9:55 a.m., a highway patrolman claims to have administered a polygraph examination to Mr. Johnson. (Filing 27, Exs. 2 & 2A). As to some of the questions, the patrolman concluded that Mr. Johnson was being deceptive. Among the answers thought to be deceptive were responses to questions about whether Mr. Johnson had seen the victim's vehicle on the night in question, whether Mr. Johnson was present when the victim was shot, whether there was a gun in the vehicle in which Johnson was driving, whether Mr. Johnson had shot the victim and whether Branting had shot the victim. The examiner believed that the answer to the question of whether Branting shot the victim was indicative of greater deception than the answer regarding whether Mr. Johnson had shot the victim. The report of the examination was transcribed on April 25, 1994 (after the arrest of Mr. Johnson). (Filing 27, Ex. 2A). The patrolman stated that he communicated to the Sheriff and Williamson that "Mr. Johnson was not being truthful." The time this

apparently oral report was made is unclear from the patrolman's affidavit. The Sheriff was not present during the polygraph examination.

6. According to a report prepared by Williamson (Filing 27, Ex. 3F), sometime in the afternoon of April 19, 1994, and ostensibly because the oral polygraph report regarding Mr. Johnson contradicted Braun's first exculpatory statement of Johnson (Filing 27, Ex. 1 ¶ 7(c)), the Sheriff and Williamson went to Columbus, Nebraska, which is in a different county than Merrick County (Filing 27, Ex. 3F). They met a Platte County Sheriff's deputy and proceeded to a grocery store where Braun worked. In the office of the store "Sheriff Schneiderheinz advised Miss Braun of her Miranda Rights at which time she agreed to waive and talk to us." (*Id.*) After "several minutes of conversation," the Sheriff, Williamson and the Platte County deputy went to the Platte County Sheriff's office to continue the interview. (*Id.*) Williamson and Braun went into an interview room. The report is unclear whether the Sheriff went into the interview room at the Platte County Sheriff's office with Williamson and Braun. It is clear from the report that the Sheriff was in the Platte County Sheriff's office building throughout the interview. In later testimony the Sheriff admitted under oath that he was present for the interview, at least for "a short time." (Filing 27, Ex. 5, Tr. Sheriff's Test. Prelim. Hr'g at 61:18–25; 62:1–15). The Sheriff has also sworn in this case that "I believed that Ms. Braun was being truthful during her second interview." (Filing 27, Ex. 1 ¶ 7(e)). It is thus plain that the Sheriff was personally present during this second interview for some or all of the interview. The interview was not tape recorded.

7. The Sheriff claims that Braun "dramatically" recanted her previous statement during this second interview. (Filing 27, Exs. 1 ¶ 7(d) & 3F). Among other things, Braun allegedly stated that she loved Mr. Johnson, she had previously lied, she saw Mr. Johnson's vehicle swerve into the other lane as another set of headlights appeared, Mr. Johnson's vehicle passed the second vehicle, the second vehicle swerved, the tail lights of the second vehicle disappeared from the road, and as she passed by she saw the second vehicle with its headlights on in the field adjacent to the highway. She also allegedly stated that she and Branting, but not Johnson, later drove by the spot four times while they were together in the same car. On the last occasion Branting, according to Braun, stopped to investigate. Braun, according to the report, allegedly agreed to take a polygraph examination regarding this second statement.

8. According to an affidavit and report of a highway patrol officer, later in the evening of April 19, 1994, Braun allegedly took a polygraph examination regarding the truthfulness of the statements contained in her second interview. (Filing 27, Exs. 2 & 2B). The state patrol officer claims that he administered the polygraph examination, that Braun essentially repeated the statements that she had made in the second interview to the Sheriff and Williamson and that the patrol officer believed she was telling the truth. The Sheriff was not present during this examination. The examiner stated that he reported, apparently orally, the results of the polygraph examination to the Sheriff and Williamson. The precise time and date when the oral report was made is not evident from the record. The polygraph report was not transcribed until April 26 or April 27, 1994 (after the arrest of Mr. Johnson).

9. According to the Sheriff, and apparently after the second interview with Braun, the Sheriff and Williamson went to Lincoln, Nebraska, to interview Branting on April 19, 1994. (Filing 27, Ex. 1 ¶ 7(f)). Branting spoke with the Sheriff and Williamson, and because his statements were inconsistent with Braun's second interview, the Sheriff and Williamson arrested Branting.

10. It is claimed that Branting took a polygraph test on April 20, 1994. (Filing 27, Exs. ¶ 7(g), 2 & 2C). Although Branting denied that he or Johnson were involved in the death of the victim, the polygraph examiner found that Branting gave deceptive answers as to the involvement of both men. The polygraph examiner told the Sheriff and Williamson that "Branting was not being truthful." (Filing 27, Ex. 2 ¶ 20). The time

or date when this oral report was made is not evident from the record. The written polygraph report was transcribed on April 22, 1994 (after the arrest of Mr. Johnson). Neither the Sheriff nor Williamson were present during the polygraph examination.

11. The Sheriff then decided to arrest Mr. Johnson. According to his affidavit given in this case (Filing 27, Ex. 1 ¶ 8), the Sheriff concluded that he had probable cause to arrest Mr. Johnson for two reasons: (a) the polygraph test results regarding Mr. Johnson, Braun and Branting; and (b) the inculpatory statements of Braun regarding Mr. Johnson given during her second interview. (*Id.*)

12. As earlier noted, Mr. Johnson was arrested on April 21, 1994, and charged with aiding and abetting second degree murder (Neb.Rev.Stat. § 28–304 (Reissue 1989)) and aiding and abetting the use of a firearm to commit the murder (Neb.Rev.Stat. § 28–1205 (Reissue 1989)). (*Id.*) Both charges are felonies under Nebraska law, and under Nebraska law the Sheriff was authorized to arrest Mr. Johnson without a warrant in a public place if there was probable cause to believe a felony had been committed by Mr. Johnson. Neb.Rev.Stat. § 29–404.02 (Reissue 1989). Mr. Johnson was held in jail until he was released on May 3, 1994, when he posted a $50,0000 bond (10 percent option). (Filing 27, Ex. 6 (receipt of May 3, 1994, and Order of May 6, 1994)).

13. A "probable cause" hearing (Filing 27, Ex. 6 (Order of April 21, 1994))[1] and, later, a preliminary hearing (Filing 27, Ex. 6 (Order of June 28, 1994)) were held regarding Mr. Johnson before the same county judge. The judge found probable cause to require Mr. Johnson to answer the charges on both occasions. (*Id.*) At the "probable cause" hearing, which was very short (four pages of transcript), the Sheriff, who was the only witness, recounted and substantially relied upon some of the statements Braun allegedly made at the second interview. (Filing 27, Ex. 4, Tr. 2:2–24). The Sheriff also testified at the preliminary hearing. As not-

ed earlier, the Sheriff stated that he had participated in the second interview of Braun (Filing 27, Ex. 5, Tr. 61:12–25; 62:1–12). He further identified written statements or notes regarding the Braun interviews. (Filing 27, Ex. 5, Tr. 73:25–75:15).

14. The charges against Mr. Johnson were later dismissed by the prosecution, and a grand jury indicted Ed Kula for the murder of the victim. (Filing 27, Ex. 1 ¶¶ 12–14; Filing 31, Ex. 15 ¶ 11). But before the case against Mr. Johnson was dismissed on November 17, 1994 (Filing 27, Ex. 6 (Order of Dismissal)), the state district judge, who would have handled the trial of Mr. Johnson's case had the trial proceeded, remanded the case to the county judge for a further preliminary hearing. (Filing 27, Ex. 6 (Order of September 15, 1994)). No such preliminary hearing was held prior to the dismissal of the case. (Filing 27, Ex. 6).

15. In Nebraska the purpose of a preliminary hearing is to determine whether there is probable cause to believe that the person charged has committed the crime charged. Neb.Rev.Stat. § 29–506 (Reissue 1989).

### B. Braun's Denial

A critical part of the Sheriff's claim of probable cause, or arguable probable cause, to arrest Mr. Johnson rests on the purported statements of Braun incriminating Mr. Johnson during the second interview. (Filing 27, Ex. 1 ¶ 8 (Aff. of Sheriff stating claimed basis for probable cause)). Braun has submitted an affidavit in this case which flatly denies that she ever made the statements attributed to her at the second interview or otherwise. The affidavit states in pertinent part that:

I, RHONDA BRAUN, after being first duly sworn on oath depose and state as follows:

1. On April 15, 1994, I left Silver Creek, Nebraska, at approximately 11:05 p.m. and at that time was following Charles E. Johnson in his employer's pickup headed eastbound to Clarks, Nebraska;

---

1. This hearing was apparently held to comply with *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (requiring prompt judicial probable cause determination regarding persons arrested without a warrant).

2. Concerning my observations of Mr. Johnson's vehicle while following him to Clarks, Nebraska, I never told anyone:

    A. That Mr. Johnson passed another vehicle;

    B. That I saw the tail lights of another vehicle, either ahead of Mr. Johnson's vehicle, beside Mr. Johnson's vehicle, or behind Mr. Johnson's vehicle;

    C. That I saw a vehicle with its head lights on in a field on the south side of Highway 30 while following Mr. Johnson's vehicle to Clarks; nor

    D. That I saw Mr. Johnson's vehicle go around another vehicle.

3. I never have told anyone that I saw the head lights of a vehicle in a field south of Highway 30 when I followed Mr. Johnson to Mr. Johnson's ex-wife's place;

4. Further, I never told anyone that I lied during my interview with Sheriff Schneiderheinz and Deputy Williamson on April 18, 1994;

5. I never told anyone that Mr. Johnson's vehicle approached another westbound vehicle while I was following him between Silver Creek and Clarks; and

6. The only time that I saw lights of a vehicle in a field south of Highway 30 was at approximately 1:30 a.m. on April 16, 1994, at which time I stopped and Mr. Branting went out into the field to check on the vehicle. When Mr. Branting returned to my vehicle we went to Clarks and Mr. Branting reported the vehicle in the field.

(Filing 31, Ex. 14.)

In addition to this affidavit, the record contains the transcript of Braun's testimony at the preliminary hearing in state court where she was called to testify by the prosecution. (Filing 27, Ex. 5, Tr. 110:25–150:6). Her testimony at the preliminary hearing was generally consistent with the affidavit she filed in this court, despite efforts by the prosecutor to impeach his own witness by reference to the alleged statement she had given to the highway patrol officer after the second interview. (Filing 27, Ex. 5, Tr. 148:25–149:9). Indeed her testimony so favored Mr. Johnson that his defense counsel

passionately argued that her testimony, elicited by the prosecutor, required Mr. Johnson's release:

Now what we really have to do is then analyze Rhonda Braun's testimony because that's the key. . . . Rhonda Braun is consistent with her testimony. She was consistent ten days ago with her testimony. She's consistent today with her testimony. She says that she followed the Johnson vehicle or the vehicle that Mr. Johnson was driving. . . .

    . . . .

She never ever testified that she saw the . . . second vehicle swerve and go out south of Highway 30 out into a field. . . . And I wonder why she wasn't asked that question. She wasn't asked the question, 'cause she never saw it. And she didn't see it, because it didn't happen and the state has absolutely no evidence whatsoever to . . . implicate this particular defendant with the crime as charged.

(Filing 27, Ex. 5, Tr. 166:16–167:3; 168:6–14).

## C. Jury Question

It is helpful to recount the substantive law, albeit briefly, in order to understand what is and is not at issue. It is then necessary to apply that law to the facts to determine whether there is a material fact in dispute which precludes summary judgment.

**1.**

First, in Nebraska a peace officer may arrest a person in a public place if the officer has probable cause to believe that person has committed a felony. Neb.Rev. Stat. § 29–404.02(1) (Reissue 1989). Second, an officer has probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person in believing the suspect committed the offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). Third, reasonable police officers may rely upon polygraph examinations in conjunction with other evidence for probable cause purposes, at least for purposes of assessing their conduct in later civil rights suits. *See, e.g., Booker v. Ward,* 905 F.Supp. 483, 491

(N.D.Ill.1995) (citing, among other cases, *Bennett v. City of Grand Prairie, Texas,* 883 F.2d 400, 405–06 (5th Cir.1989) and *Prokey v. Watkins,* 942 F.2d 67, 73 (1st Cir.1991)). Fourth, even where the officer actually lacked probable cause, the officer is entitled to qualified immunity from a suit for damages where what the officer knew, when measured against the objective standard of a "reasonable officer," arguably establishes probable cause. *Malley v. Briggs,* 475 U.S. 335, 345–46, 106 S.Ct. 1092, 1098–99, 89 L.Ed.2d 271 (1986). Fifth, if a reasonable police officer's perception of probable cause would differ depending upon what the officer actually knew, there is a factual dispute that must be resolved by a fact finder. *Prokey v. Watkins,* 942 F.2d at 73 (affirming denial of motion for summary judgment on the merits and on qualified immunity defense where issue was probable cause for arrest even though court held that it was proper for officer to rely upon polygraph examination results, stating: "if what the policeman knew prior to the arrest is genuinely in dispute, and if a reasonable officer's perception of probable cause would differ depending on the correct version, that factual dispute must be resolved by a fact finder").

### 2.

In applying the foregoing substantive law to the facts, it is necessary to remember what is "material" from a factual viewpoint. The substantive law identifies facts which are "material," and disputed facts that might affect the outcome of the suit, given the application of the substantive law, are "material" and will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The factual question about whether Braun made the statements attributed to her in the second interview and later at her polygraph examination are obviously "material" to both a determination of actual probable cause and arguable probable cause. This is evident from the affidavit of the Sheriff which explic-

itly bases his assessment of probable cause upon *the fact* of Braun's statements. (Filing 27, Ex. 1 ¶ 8).

This is also evident from a straightforward analysis of the facts. If Braun did not make the statements, then the Sheriff had nothing of substance to connect Mr. Johnson to the crime except for the statements of Mr. Johnson and Branting and the first Braun statement. Since the Johnson and Branting statements were exculpatory, the statements ruled out, rather than ruled in, Mr. Johnson. The fact that the polygraph examiner thought the two were lying, while relevant, is not sufficient. No prudent person would arrest someone *solely* on the results of polygraph examinations. *See, e.g., Bennett v. City of Grand Prairie, Texas,* 883 F.2d at 405–06 (the results of polygraph examinations may be considered *in conjunction with other evidence* to evaluate probable cause).

Moreover, if Braun did not make the statements attributed to her in the second interview and later to the polygraph examiner, then the Sheriff could not reasonably ignore her first interview statements. Braun's first interview statement (a) provided eye witness evidence strongly suggesting that Mr. Johnson could not have committed the crime, (b) essentially corroborated Mr. Johnson's statements, and (c) forcefully contradicted the polygraph examiner's conclusions about Mr. Johnson and Branting.

Since there is no doubt that Braun has denied that she made such statements at the second interview and subsequently to the polygraph examiner, a factual dispute exists which precludes summary judgment.[2] But the Sheriff, in a reply brief, tries to avoid this result by suggesting that he only relied upon the reports of others about what Braun said, and since he had no reason to think those reports were inaccurate he could lawfully rely upon those reports.

I am not persuaded by this belated argument. The difficulty with it is that the evidence establishes without doubt that the

---

**2.** Braun may have trouble convincing a jury that she is telling the truth. But I also note that Mr. Johnson has adduced evidence that suggests the Sheriff had a motive to lie—he was involved in a

heated election campaign and he needed to solve the murder quickly in order to be re-elected. In any event, credibility questions such as these are for the fact finder and not for me.

Sheriff was actually at the second interview of Braun at least for a time.

If the Sheriff knew that Braun did not make the statements because he was present at the interview, then he obviously could not rely on a inaccurate report of the statements because he knew the truth. If the Sheriff is now claiming by the assertion in his reply brief (which is not supported by his evidence) that he was not present for the entire interview and thus did not know, for example, that his deputy was lying about Braun's statements, then the record is sufficiently in dispute regarding the presence of the Sheriff throughout the interview as to preclude summary judgment.

## II. State Proceedings Do Not Preclude Probable Cause Claim/Issue

█ The Sheriff argues that the state court proceedings, either the "probable cause" hearing or the preliminary hearing, preclude both the assertion of the claim (cause of action) related to lack of probable cause and assertion of the issue of lack of probable cause as a part of the claim. These closely related concepts, which in the past were called "res judicata" and "collateral estoppel," are now known as "claim preclusion" and "issue preclusion."

█ Normally, "claim preclusion" (res judicata or preclusion of a cause of action) takes place where four factors are proven to exist: (1) a prior judgment was rendered by a court of competent jurisdiction; (2) the prior decision was a final decision on the merits; (3) the same claim is involved in all cases; and (4) the same parties or those in privity are involved in all cases. *See, e.g., County of Boyd v. US Ecology, Inc.,* 858 F.Supp. 960, 966 (D.Neb.1994), *aff'd,* 48 F.3d 359 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995). Nebraska law is identical. *Id.* (citing *King v. Hoover Group, Inc.,* 958 F.2d 219, 222 (8th Cir. 1992) (applying the same test under Nebraska law)).

---

**3.** It is important here to recognize that there is a difference between a false arrest claim and a claim which asserts a failure to give the person arrested a prompt judicial hearing. *Webster,* 913

█ "Collateral estoppel" or issue preclusion is similar in nature, and this doctrine prevents re-litigation of an issue when (1) the issue to be litigated is identical to the issue presented in a prior case; (2) the issue was actually litigated in the prior proceedings; (3) the issue was resolved by a valid and final judgment; and (4) determination of the issue was essential to the prior judgment. *Webster v. Gibson,* 913 F.2d 510, 513 (8th Cir. 1990) (a prisoner was not collaterally estopped from asserting the claim that he was deprived of a prompt judicial determination of probable cause even though he was convicted because the issue had not been actually litigated in the criminal case). Nebraska law is very similar. *See State v. Secret,* 246 Neb. 1002, 1008, 524 N.W.2d 551, 556 (1994) (the four factors under Nebraska law are: (1) the identical issue was decided in the prior action; (2) there was a final judgment on the merits; (3) the party against whom the rule is applied was a party or in privity with a party; and (4) there was a full and fair opportunity to litigate the issue).

For reasons that are both obvious and subtle, "claim preclusion" and "issue preclusion" do not bar litigation of the probable cause claim or issue in this case. I shall state only two of the more obvious reasons why this is true.

First, there can be no claim preclusion in this case because no "final" decision was ever rendered. The entire case was dismissed on motion of the prosecutor before the merits were ever reached.

Second, there was no "final" decision on the probable cause issue. Prior to the dismissal of the entire case, the district court remanded the matter to the county court for redetermination of probable cause. No such redetermination ever took place. Thus, there could be no issue preclusion on the subject of probable cause because the issue of probable cause was never finally determined.[3]

Accordingly,

IT IS ORDERED that:

---

F.2d at 513 n. 7. Here, Johnson's claim is in the nature of a false arrest claim, and is not a claim that he was denied a prompt judicial hearing.

1. The motion for summary judgment (Filing 25) is denied;

2. The motion to strike (Filing 38) is denied as moot.