7 F.3d 1464
 38 ERC 1685, 24 Envtl. L. Rep. 20,001
 Stuart SATSKY; Wendy A. Satsky; Gary L. Hand; Patricia K.
Hand; Darryl J. Bangert; Eagle River White Water, Inc., a
Colorado corporation; Mark C. Lokay, also known as Vail
Fishing Guides; Gore Creek Flyfisherman, Inc., a Colorado
corporation; Beaver Creek Flyfisher, a Division of Gore
Creek Flyfisherman, Inc., on their own behalf and as
representatives of a class of similarly situated
individuals, residents, property owners, and operators of
businesses, Plaintiffs-Appellants,
v.
PARAMOUNT COMMUNICATIONS, INC., a Delaware Corporation,
Defendant-Appellee,
Natural Resources Defense Council, Colorado Trial Lawyers
Association, State of Colorado, State of California, State
of Kansas, State of Montana, State of Nevada, State of New
Mexico, State of Oklahoma, State of Utah, State of
Washington, State of Wyoming, Amici Curiae.
 No. 92-1037.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 24, 1993.
 
 Herbert Anthony Delap of Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Denver, CO, for plaintiffs-appellants.
 Neil Peck (Thomas S. Nichols, Gail L. Wurtzler, and Karen L. Page, with him on the brief) of Davis, Graham & Stubbs, Denver, CO, for defendant-appellee.
 James R. May, Sp. Cooperative Counsel, Widener University School of Law, Wilmington, DE, Larry Trattler of Malman, Trattler & Dehncke, Denver, CO, and Priscilla Budeiri and Arthur Bryant, Trial Lawyers for Public Justice, P.C., Washington, DC, filed brief for amicus curiae Natural Resources Defense Council.
 Kevin S. Hannon of The Firm of Kevin S. Hannon, Denver, CO, filed a brief for amicus curiae Colorado Trial Lawyers Ass'n.
 Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Patricia S. Bangert, Deputy Atty. Gen., Casey A. Shpall, First Asst. Atty. Gen., Mary Capdeville and Stephen M. Brown, Asst. Attys. Gen., CERCLA Litigation Unit, Natural Resources Section, Denver, CO, for amicus curiae State of Colo. (With them on the brief for amici curiae: Daniel E. Lungren, Atty. Gen., Roderick E. Walston, Chief Asst. Atty. Gen., Theodora Berger, Asst. Atty. Gen., and Brian Hembacher and Sara Russell, Deputy Attys. Gen., Sacramento, CA, for State of Cal. Robert T. Stephan, Atty. Gen., Topeka, KS, for State of Kan. Mark Racicot, Atty. Gen., Helena, MT, for State of Mont. Frankie Sue Del Papa, Atty. Gen., Carson City, NV, for State of Nev. Tom Udall, Atty. Gen., Santa Fe, NM, for State of N.M. Susan Brimer Loving, Atty. Gen., Oklahoma City, OK, for State of Okl. Paul Van Dam, Atty. Gen., Salt Lake City, UT, for State of Utah. Kenneth O. Eikenberry, Atty. Gen., James K. Pharris, Sr. Asst. Atty. Gen., and Jay J. Manning, Asst. Atty. Gen., Olympia, WA, for State of Wash. Joseph B. Meyer, Atty. Gen., Cheyenne, WY, for State of Wyo.)
 Before SEYMOUR, MOORE, and ANDERSON, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Plaintiffs brought this diversity action against Paramount Communications, Inc. (Paramount) alleging a variety of private property claims. They contend that Paramount's operation of a mine produced hazardous waste that was disposed of in a manner that damaged their property and livelihoods.[1] The district court held that certain of plaintiffs' claims were barred under the doctrine of res judicata by a consent decree between Paramount and the State of Colorado in a prior action. Satsky v. Paramount Communications, Inc., 778 F.Supp. 505 (D.Colo.1991). It therefore entered partial summary judgment for Paramount on these issues.[2] Plaintiffs appeal, and we reverse and remand.
 
 I.
 
 2
 This suit is one of several in ten years of litigation surrounding the mining activity at Eagle Mine Facility in Eagle County, Colorado, and the hazardous waste produced from that activity. Mining at the site began as early as 1916 and continued until 1981. During that time, the facility was owned by a series of corporate entities, culminating with ownership by Paramount in 1983. Paramount acquired ownership through a corporate merger with the prior owner, Gulf + Western Industries, Inc. During the period of active mining, waste production from the mine was placed in five different locations in the area surrounding Eagle Mine and Eagle River. The waste contained hazardous substances that caused environmental harm to the areas in which it was placed.[3]
 
 
 3
 In 1983, the State of Colorado filed a complaint against Gulf + Western Industries, Inc. for natural resource damages under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 (CERCLA) (1988).[4] In 1985, the State added a claim for CERCLA response costs, including all costs of removal of the waste during any "clean up" of the Eagle Mine site. In addition, the State asserted pendant state claims for statutory nuisance, common law nuisance, strict liability in tort, and negligence. Upon a motion by Paramount, the pendent state claims were dismissed by the district court. After three years of negotiations, the State and Paramount entered into a consent decree. The decree contained a mandatory injunction requiring the performance of a Remedial Action Plan (RAP). The RAP contained provisions in which the mine waste would be removed from the mine as well as from four of the previous waste dumping sites, and transported to a site known as the New Tailings Pond. The RAP provided for plugging various leaks in the mine to prevent drainage of hazardous wastes into Eagle River. The decree also required Paramount to pay the State for natural resources damages, response costs, and the costs of continuing oversight of Eagle Mine.
 
 
 4
 Plaintiffs contend that the activities which took place as a result of the consent decree had a disastrous effect upon the Eagle River and the surrounding community. As a result of the alleged harm caused by the mining activity and the clean up efforts, plaintiffs filed suit against Paramount on behalf of themselves and a class of similarly situated parties, alleging negligence, strict liability, nuisance, trespass, and misrepresentation. The complaint requests CERCLA response costs, punitive damages, and an injunction requiring Paramount to abate its past and present practices of releasing toxic substances. Plaintiffs also seek to recover for property damage and economic losses.
 
 
 5
 Paramount moved for summary judgment on all of plaintiffs claims except for the response costs. Paramount argued that plaintiffs' claims were precluded by the doctrine of res judicata due to the consent decree in Paramount I. The district court agreed with Paramount's position and dismissed the claims for negligence, strict liability, nuisance, and trespass.
 
 
 6
 Plaintiffs argue on appeal that the consent decree has no preclusive effect as to their claims, contending that the consent decree is not a final judgment and has no binding effect on third parties. They argue there is no identity of claims or parties between Paramount I and the instant case. They also contend that the consent decree cannot bar claims which arose after the decree was entered. Paramount disputes these arguments and contends that the district court was correct in dismissing the claims.
 
 II.
 
 7
 "Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action." Northern Natural Gas v. Grounds, 931 F.2d 678, 681 (10th Cir.1991). Res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication. Id. A claim is barred by res judicata if three elements exist: (1) a final judgment on the merits in the prior suit; (2) the prior suit involved identical claims as the claims in the present suit; and (3) the prior suit involved the same parties or their privies. See Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); Northern Natural Gas, 931 F.2d at 681, 682.
 
 
 8
 Whether the doctrine of res judicata applies to the case before us is a question of law which we review under the de novo standard. Northern Natural Gas, 931 F.2d at 681. We review a grant or denial of a motion for summary judgment under the de novo standard as well. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). With this in mind, we turn now to an examination of each element.
 
 A. Final Judgment on the Merits
 
 9
 Plaintiffs argue that Paramount I does not constitute a final judgment on the merits because the private property claims raised there by the State were dismissed without prejudice and such a dismissal is not an adjudication on the merits. Plaintiffs also assert that the consent decree should be interpreted as a contract and should therefore not be considered a final judgment.
 
 
 10
 Plaintiffs are correct that a dismissal without prejudice "is a dismissal that does not 'operat[e] as an adjudication upon the merits,' Rule 41(a)(1), and thus does not have a res judicata effect." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990). However, a consent decree is afforded the same effect as any other judgment. "A consent decree ... is an agreement that the parties desire and expect will be reflected in and be enforceable as a judicial decree that is subject to the rules generally applicable to other judgments and decrees." Rufo v. Inmates of Suffolk County Jail, --- U.S. ----, ----, 112 S.Ct. 748, 757, 116 L.Ed.2d 867 (1992). In Rufo, the Supreme Court held consent decrees to be subject to Federal Rule of Civil Procedure 60(b) which governs "a final judgment, order, or proceeding."
 
 
 11
 While a consent decree is accorded the weight of a final judgment, it "is to be construed ... basically as a contract." United States v. ITT Continental Baking Co., 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975); see also United States v. Northern Colorado Water Conservancy Dist., 608 F.2d 422, 430 (10th Cir.1979). "The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4443 at 384 (1981). We must look to the consent decree itself to determine if the decree represents a final judgment on the merits.
 
 
 12
 The consent decree states "that settlement and entry of this Consent Decree is made in good faith to avoid expensive and protracted litigation and to finally settle and resolve all claims between the parties which have been raised by the State's complaint and first amended complaint." Aplt.App., doc. 7 at 2 (emphasis added). Consequently, we hold that the consent decree is a final judgment on the merits of the state law claims.
 
 B. Identity of Parties
 
 13
 Res judicata is applicable only to parties to the first suit or their privies. Lowell Staats Mining Co. v. Philadelphia Elec. Co., 878 F.2d 1271, 1280 (10th Cir.1989) (citing Allen v. McCurry, 449 U.S. at 94, 101 S.Ct. at 414). Since plaintiffs were not parties of record in Paramount I, we must determine if privity exists between the State of Colorado and plaintiffs.
 
 
 14
 The district court found that plaintiffs "were privies of the State of Colorado under the parens patriae doctrine." Satsky, 778 F.Supp. at 510. The district court determined that the State in Paramount I represented all of its citizens when it sued for the environmental harm caused by the mining activity. Plaintiffs and amici curiae State of Colorado contend that the State cannot, and did not, represent plaintiffs' private interests.[5] According to plaintiffs, the claims dismissed by the district court are private property claims which cannot be the basis for a parens patriae relationship.
 
 
 15
 "There is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel," Lowell Staats, 878 F.2d at 1274-75, since "privity depends upon the circumstances," 1B Moore's Federal Practice p 0.411 at III-215 (1993). "Privity may ... be established if the party to the first suit represented the interests of the party to the second suit." Lowell Staats, 878 F.2d at 1280; see also Moore, p 0.411 at III-215.
 
 
 16
 The Supreme Court has recognized the "right of a State to sue as parens patriae to prevent or repair harm to its 'quasi-sovereign' interests." Hawaii v. Standard Oil Co. of California, 405 U.S. 251, 258, 92 S.Ct. 885, 889, 31 L.Ed.2d 184 (1972). "In order to maintain [a parens patriae ] action, the State must articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party. The State must express a quasi-sovereign interest." Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez, 458 U.S. 592, 607, 102 S.Ct. 3260, 3268, 73 L.Ed.2d 995 (1982). "Parens patriae standing has been explained on the ground that the plaintiff state is not merely advancing the rights of individual injured citizens, but has an additional sovereign or quasi-sovereign interest." 17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4047 at 223 (1988). Although the Supreme Court has not expressly defined what is a "quasi-sovereign" interest, it is clear that a state may sue to protect its citizens against "the pollution of the air over its territory; or of interstate waters in which the state has rights." 12 Moore's Federal Practice p 350.02 at 3-20 (1993). It is equally clear, however, that a state may not sue to assert the rights of private individuals. See Alfred L. Snapp, 458 U.S. at 600, 102 S.Ct. at 3265; Pennsylvania v. New Jersey, 426 U.S. 660, 665, 96 S.Ct. 2333, 2335, 49 L.Ed.2d 124 (1976); New York by Abrams v. Seneci, 817 F.2d 1015, 1017 (2nd Cir.1987); Illinois v. Life of Mid-America Ins. Co., 805 F.2d 763, 766 (7th Cir.1986), 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3531.11 at 19 (1984).
 
 
 17
 In Daigle v. Shell Oil Co., 972 F.2d 1527 (10th Cir.1992), this court considered whether private damages are recoverable under CERCLA. We reviewed the legislative history of CERCLA and determined that "both houses of Congress considered and rejected any provision for recovery of private damages unrelated to the cleanup effort, including medical expenses." Id. at 1535. Because these costs are not recoverable under CERCLA, the State could not have asserted such claims in Paramount I in its parens patriae capacity. Thus, plaintiffs are not barred on their private claims.
 
 
 18
 Paramount asserts that in addition to its status as parens patriae, the State of Colorado acted as trustee of the natural resources in Paramount I. CERCLA permits the President or the authorized representative of a state to act "on behalf of the public as trustee of ... natural resources." 42 U.S.C. § 9607(f)(1). But CERCLA defines "natural resources" as "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States ... any State or local government ..., or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe." 42 U.S.C. § 9601(16). Thus, with specific exceptions for Indian lands, CERCLA does not cover private property.
 
 
 19
 The legislative history of CERCLA bears out this interpretation. Early drafts of CERCLA covered private property. See Ohio v. United States Dep't of Interior, 880 F.2d 432, 460 (D.C.Cir.1989) (citing H.R. 7020, 96th Cong., 2d Sess. § 5 (1980); H.R. 85, 96th Cong., 1st Sess. § 103(a)(2); S. 1480, 96th Cong., 1st Sess. § 4(a)(2)(A)). "Each of these proposed provisions was rejected and the statute's 'natural resources' formulation was adopted instead." Id. at 460. Debate on the bill that became CERCLA provides further evidence that Congress intended to exclude coverage for private property damage. "We eliminated all third party compensation from the fund, including out-of-pocket medical expenses of victims of releases." 126 Cong.Rec. S14967 (Nov. 24, 1980) (statement of Sen. Stafford). A private individual cannot recover from the fund but "the injured person still has a legal cause of action against the party causing the injury." Id. at S14974 (statement of Sen. Mitchell).
 
 
 20
 The court in Ohio v. United States Dep't of Interior interpreted CERCLA to exclude recovery for private property damage. "[The Indian clauses] provision would [not] have been necessary if Congress ... had intended 'natural resources' to generally include resources under purely private ownership." 880 F.2d at 460. "[D]amage to private property--absent any government involvement, management or control--is not covered by the natural resource damage provisions of the statute." Id. Similarly, the Supreme Court has stated that compensation to "third parties for damage resulting from hazardous substance discharges ... [is] clearly beyond the scope of CERCLA." Exxon Corp. v. Hunt, 475 U.S. 355, 375, 106 S.Ct. 1103, 1115, 89 L.Ed.2d 364 (1986).[6]
 
 
 21
 The State could not have recovered under either CERCLA or the parens patriae doctrine for injuries to Plaintiffs' private interests. However, the State has recovered for injuries to the natural resources of Colorado. When a state litigates common public rights, the citizens of that state are represented in such litigation by the state and are bound by the judgment. Washington v. Washington State Comm'l Passenger Fishing Vessel Ass'n, 443 U.S. 658, 692 n. 32, 99 S.Ct. 3055, 3077 n. 32, 61 L.Ed.2d 823 (1979); see also City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958) (government litigation precludes relitigation by individuals who assert no more than a general public interest).
 
 
 22
 The extent to which plaintiffs are barred, then, turns on the nature of the rights asserted by them. Plaintiffs claim injuries to "property damage, diminution of value to real estate, loss of income and other economic losses including loss of asset value, increased operating expenses, increased costs of personal protection from contaminated domestic water or the threat of contaminated domestic water, loss of water quality or quantity, loss or enjoyment of real property, mental anguish, and emotional distress and an increased risk of harm and an increased risk of contracting fatal or otherwise serious illnesses." Second Amended Complaint at 30. To the extent these claims involve injuries to purely private interests, which the State cannot raise, then the claims are not barred. By "purely private interests," we mean claims that the State has no standing to raise. Some of the claims plaintiffs raise clearly fall in this category. However, claims based on injuries to the natural resources held by the State of Colorado, are barred by the consent decree. Paramount argues that plaintiffs claim injuries from damage to that which is actually a public resource. If the claims are for injuries to interests which all citizens hold in common, and for which the State has already recovered, the judgment in Paramount I acts as a bar. We are not able to determine from this record with any precision whether some of the damages plaintiffs are attempting to recover are damages which the State was entitled to recover in Paramount I.[7] These issues are left to the district court on remand.
 
 III.
 
 23
 Claims for private damages are not recoverable under CERCLA and the State cannot assert such claims in its capacity as parens patriae. We therefore REVERSE the district court's order dismissing the plaintiffs' claims. We REMAND to the district court to determine which claims asserted by plaintiffs are truly private, and which claims are based on common public rights, in accordance with the analysis set out in this opinion.
 
 
 
 [1]
 Plaintiffs are residents and businesses in the Eagle River area. They include Stuart and Wendy A. Satsky, Gary and Patricia K. Hand, Darryl J. Bangert, Eagle River White Water, Inc., Mark C. Lokay d/b/a Vail Fishing Guides, Gore Creek FlyFisherman, Inc., and Beaver Creek FlyFisher
 
 
 [2]
 The district court declared there was no just reason for delaying final judgment on the issues it held barred. It entered an order under Fed.R.Civ.P. 54(b), thereby permitting plaintiffs to appeal
 
 
 [3]
 The substances at issue are forms of heavy metals including antimony, arsenic, beryllium, cadmium, chromium, lead, mercury, nickel, silver, thallium, uranium, and zinc
 
 
 [4]
 This suit by the State will be referred to as Paramount I
 
 
 [5]
 "The State did not purport to, nor can it, represent the purely private interests of its citizens who may be injured, in their persons or their property, by these releases." Br. for Amici Curiae State of Colorado at 5
 
 
 [6]
 Paramount relies on Supporters to Oppose Pollution v. Heritage Group, 973 F.2d 1320 (7th Cir.1992), as authority for the proposition that a prior suit by the state bars a subsequent suit by citizens for injuries arising from the same series of events. The decision is not on point as the citizens there did not request recovery for private property or personal injury damages
 
 
 [7]
 Paramount argues that even if the State of Colorado was not entitled to recover certain damages, it has already done so and thus Paramount I bars further recovery. However, a prior judgment is not res judicata unless there is privity between the parties. Lowell Staats, 878 F.2d at 1280. Thus, the relevant inquiry here is what the State of Colorado was entitled to recover as opposed to what the State actually recovered