LUCERO, J.,
dissenting.
Because my colleagues expand the well-defined principles of parens patriae to include preclusion based on state intra-agency proceedings and because they misapply the doctrine of collateral estoppel, I respectfully dissent.
The majority concludes that the common law applies to citizen suits under the Clean Air Act and thereby seeks to invoke par-ens patriae standing. But my colleagues ignore the Clean Air Act’s impact on common-law principles.[1] Even assuming tra *1273 ditional preclusion doctrines were to apply, the 2005 and 2009 Orders lack preclusive effect.
I
In determining whether the 2005 Order has collateral estoppel effect, the majority correctly observes that the Wyoming Supreme Court would look to federal law. (Majority Op. 1267.) I disagree, however, with my colleagues’ understanding of the manner in which federal law applies. My objection primarily concerns the third element of collateral estoppel: “whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.” Brock-man v. Wyo. Dep’t of Family Servs., 342 F.3d 1159, 1166 (10th Cir.2003) (quotation omitted).
Three analytical frameworks could guide an inquiry into whether Sierra Club was in privity with the DEQ as to the 2005 Order. Examples of these analyses are set forth in the case law. The first, articulated in Satsky v. Paramount Communications, Inc., 7 F.3d 1464 (10th Cir.1993), suggests that parens patriae is an extraordinary doctrine of standing, which precludes suits only when a state asserts the doctrine in federal court. The second, used by the Eighth Circuit in EPA v. City of Green Forest, 921 F.2d 1394, has the most general understanding of parens patriae preclusion.[2] The third, exemplified by the decision of the Seventh Circuit in Friends of Milwaukee’s Rivers v. Milwaukee Metropolitan Sewerage District, 382 F.3d 743, adopts the plain language of the citizen suit provision, requiring a diligent prosecution to support a determination that a state was privity with its citizens. Under any of these approaches, the majority’s conclusion that the 2005 Order has preclusive effect is fatally flawed.
A
I do not quarrel with the majority’s statement that a state is assumed to represent the.interests of its citizens if a state sues another party in a parens patriae suit. Thus, if a citizen were to sue to redress an identical injury, the citizen suit may be precluded. Cf. Satsky, 7 F.3d at 1470 (“When a state litigates common public rights, the citizens of that state are represented in such litigation by the state and are bound by the judgment.” (citations omitted)); see also Washington v. Wash. State Commercial Passenger Fishing Vessel Ass’n, 443 U.S. 658, 692 n. 32, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979). My disagreement is with the majority’s assertion that the DEQ was “acting in its parens patriae capacity.” (Majority Op. 1267.)
1
Parens patriae is a standing doctrine that allows states to vindicate their interests in federal court.[3] See New Mexico v. Gen. Elec. Co., 467 F.3d 1223, 1243 n. 30 *1274 (10th Cir.2006); see also Richard H. Fallon, Jr., et al, Hart and Wechsler’s The Federal Courts and the Federal System 261-66 (6th ed.2009). Although the term has sometimes been used more generally to refer to actions that a state takes on behalf of its citizens, its boundaries have never been expanded to include mere defenses a state agency asserts against a regulated entity appearing before the agency’s adjudicatory branch. To the contrary, case law demonstrates that the term does not encompass such actions.
Properly applied, the parens patriae doctrine is utilized when a state purports to act for all of its citizens in litigation, generally before the federal courts. The core purpose of parens patriae is to extend “special solicitude” to states litigating in federal courts. Massachusetts v. EPA, 549 U.S. 497, 518-20, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007). Because the states ceded to the federal government “[diplomatic powers and the right to make war,” it was “to be expected that upon the [federal courts] would be devolved the duty of providing a remedy.” Missouri v. Illinois, 180 U.S. 208, 241, 21 S.Ct. 331, 45 L.Ed. 497 (1901). Accordingly, parens patriae standing is a legal and equitable solution to interstate disputes that could otherwise be settled only by force, thus federal courts are compelled to entertain such suits.[4] This underlying rationale explains our willingness to give preclusive force to suits prosecuted by states in federal court. See Satsky, 7 F.3d at 1470. It also explains Satsky’s insistence that a parens patriae suit is extraordinary, in that a state bringing such a suit must allege a special injury to its own interests. Id. at 1469.
Moreover, mere enforcement of an agency’s organic statute is not a parens patriae suit. See United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 986-87 (2d Cir.1984) (emphasizing that an entity suing as parens patriae must actually purport to act in such a capacity). Instead, a state must affirmatively assert parens patriae status. In Satsky, Colorado did so in three ways. First, the governor signed an executive order permitting an extraordinary enforcement action by the Colorado Department of Health and Natural Resources. Satsky v. Paramount Commc’ns, Inc., 778 F.Supp. 505, 510 (D.Colo.1991), rev’d on other grounds, Satsky, 7 F.3d. at 1464. Second, the initial litigation was brought by Colorado “as trustee of all natural resources located within its boundaries on behalf of and for the benefit of the public.” Id. at 510. Third, the state brought that round of litigation to term by entering into a consent decree for the express benefit of its citizens. Id. at 511.
Satsky also articulates the requirement that a state plead an injury to one of its quasi-sovereign interests. Id. In 1907, the Supreme Court explained that one such quasi-sovereign interest is a state’s environment:
This is a suit by a state for an injury to it in its capacity of quasi-sovereign. In that capacity the State has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain. It has the last word as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air.
*1275 Georgia v. Tenn. Copper Co., 206 U.S. 230, 237, 27 S.Ct. 618, 51 L.Ed. 1038 (1907). One hundred years later, in Massachusetts, 549 U.S. 497, 127 S.Ct. 1438, the Court reiterated this principle and emphasized that in order to “sue [as] parens patriae” a state should allege an injury that “is one that the State, if it could, would attempt to address through its sovereign lawmaking powers.” Id. at 519, 127 S.Ct. 1438 (quotation and citation omitted). The latter statement from the Court emphasizes, once again, that simple lawmaking or law enforcement does not amount to a parens patriae action. It is only after a state has come to the doors of a federal courthouse, and asked to be admitted to assert its quasi-sovereign interests, that a court may imbue it with parens patriae status.
Without the limitations articulated in Satsky, any suit whatsoever in which a state appears as a party, ipso facto, would be a parens patriae proceeding.
2
Satsky leaves no doubt that the Wyoming Department of Environmental Quality’s appearance before the Wyoming Environmental Council (both being under the same statutory umbrella[5]) could not constitute a proper parens patriae suit. This is so for three reasons.
First, the suit was not brought in federal court. It was brought before a state administrative agency. Although federal courts sometimes grant preclusive effect to state agency proceedings, the parens patriae doctrine is not a matter of comity between the state and federal judiciaries. Rather it is a doctrine of standing which affords state officials a platform from which to vindicate their quasi-sovereign interests in federal court. The 2005 Order is not entitled to the same preclusive effect we afforded the consent decree in Satsky or the “special solicitude” the Court gave to the state in Massachusetts because it did not arise from federal litigation.
Second, the DEQ did not assert that it was suing on behalf of the citizens of Wyoming. Cf. Hooker, 749 F.2d at 986-87. In fact, the DEQ did not sue at all. Two Elk sued the DEQ before the Council to end the DEQ’s supervision of its permit, and the DEQ merely defended the suit before eventually agreeing to settle the matter. Rather than enforcing the CAA against Two Elk, the DEQ did precisely the opposite: it relinquished its right to sue. These intra-agency proceedings stand in stark contrast to the parens patriae actions that we found preclusive in Satsky. Unlike the attorney general in Satsky, the DEQ never claimed to be acting in a manner that would bind the citizens of Wyoming. The 2005 Order approving the settlement states that the DEQ and Two Elk were seeking an order “binding them” to the terms of the agreement.[6] (Emphasis added.) During the later state court proceedings, the DEQ remarked in passing that its actions were in the “public interest” and that Sierra Club’s injury was “shared by both the general public and DEQ.”[7] But the assertion of one kind of *1276 injury by a specific group of citizens, combined with a state’s competing obligations to pursue relief for a different kind of injury, may not amount to preclusion. See Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm’n, 842 F.2d 402, 409-10 (D.C.Cir.1988). In the case before us, Sierra Club pled an injury to its environmental interests. What the DEQ considered were both economic and environmental factors during the permitting process, as required by its mandate. See Wyo. Stat. § 35-11-102 (defining part of the DEQ’s mission as the development and use of “air ... resources of the state”). Applying the foregoing principles, the conclusion that the DEQ has been acting as parens patriae throughout the permitting process is unsupportable.
Third, the DEQ’s exercise of sovereign authority was necessarily limited by the CAA. In expressly creating a federal right of action, the CAA minimizes a state’s need to assert “quasi-sovereign” interests apart from the federal scheme. Cf. Tenn. Copper Co., 206 U.S. at 237-38, 27 S.Ct. 618. And although the statute entitles Wyoming to “special solicitude” should it seek to sue in federal court, Massachusetts, 549 U.S. at 518-20, 127 S.Ct. 1438, it does not extend that solicitude so as to require federal courts to give preclusive effect to every defensive act by an administrative agency that a regulated entity chooses to call a CAA enforcement action.
By intentionally overlooking the circumscribed view of parens patriae expressed in Satsky, the majority hopes to create a new rule that a state agency’s administrative adjudication of environmental regulations always creates privity. This expansion of the parens patriae doctrine would render citizen suit provisions a dead letter in spite of the Supreme Court’s admonition against “extraordinary application of the common law of preclusion” that undermines federal statutes. Taylor v. Sturgell, 553 U.S. 880, 903, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).
B
Although Satsky strongly supports the conclusion that Sierra Club cannot be precluded based on a parens patriae rationale, Sierra Club would still prevail under the frameworks established by our sister circuits. The Seventh Circuit and the Eighth Circuit have grappled with the disconnect between the common law and the citizen suit provisions of the CAA and CWA. Each has adopted a test to determine whether a state has adequately represented the interests of its citizens and thus established privity. Compare Green Forest, 921 F.2d at 1403-04, with Friends, 382 F.3d at 758-59; cf. Atl. States Legal Found., Inc. v. Eastman Kodak Co., 933 F.2d 124, 127 (2d Cir.1991) (analyzing the CWA statutory preclusion device without considering the parens patriae doctrine at all). The majority evaluates Two Elk’s preclusion claim under both Green Forest and Friends and concludes that the Council’s 2005 order is preclusive under either test. I disagree.
1
In Green Forest, the Eighth Circuit considered the estoppel effect of a consent decree entered into by the EPA and Tyson Foods. See 921 F.2d at 1397, 1403-04. Citizens filed a CWA suit against Tyson prior to the EPA’s enforcement action. Id. at 1400. The citizen plaintiffs argued that their suit should be allowed to continue despite the consent decree because the CWA’s preclusion provision only bars citizen suits filed after the commencement of a prosecution by the EPA or the state. Id. at 1403. The Eighth Circuit rejected this contention, concluding the citizens’ suit was barred by common-law estoppel. Id. at 1405.
*1277 Green Forest described parens patriae in the most general sense. Although the cases it relied upon clearly refer to suits brought by states in federal court under parens patriae as a doctrine of standing,[8] the court focused on the EPA’s role as “preeminent” enforcer of the CWA “on behalf of all citizens.” Id. at 1404. Once the EPA negotiated a consent decree, the court held, there was no longer a need for citizen suits. Id. Nevertheless, the Green Forest court roundly rejected Tyson’s contention that the “EPA’s decision not to commence an action against it is binding upon the citizens.” Id. at 1405. Such an interpretation was held impermissible because the CWA “make[s] clear that agency inaction is precisely the circumstance in which private action is appropriate.” Id. (citation omitted).
2
In Friends, the Seventh Circuit dealt directly with the interaction between the citizen suit provisions and common-law preclusion. 382 F.3d at 759; see also St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Refining, L.L.C., 500 F.Supp.2d 592, 605-06 (D.La.2007) (adopting the Friends approach). In determining the preclusive effect of a settlement agreement between Wisconsin and a polluter, the Seventh Circuit turned first to common-law preclusion. Starting from the assumption that parens patriae sometimes places the state in privity with its citizens, the court nonetheless noted that a third party may not be bound if “the representative failed to prosecute or defend the action with due diligence and reasonable prudence.” Friends, 382 F.3d at 759 (quoting Restatement (Second) of Judgments § 42(1)(e) (alterations omitted)).[9]
Focusing on this aspect of common-law preclusion, Friends determined that the common law and the statute dovetail neatly: the central question becomes whether a state diligently prosecuted a matter. Friends, 382 F.3d at 759. A citizen suit is barred only if the state has initiated a “judicial action ... capable of requiring compliance with the Act and [which] is calculated to do so.” Id. (quotation omitted). As the majority correctly notes, an agency’s “prosecutorial strategy” need not be the same as the citizen’s. (Majority Op. 1269 (quoting Karr v. Hefner, 475 F.3d 1192, 1197 (10th Cir.2007))).
This approach balances our duties to give effect to state judgments under the Full Faith and Credit Statute, 28 U.S.C. *1278 § 1738, and the need to preserve the integrity of the federal statutory scheme. As one court has put it:
[the Friends approach] does not give the polluter a pass simply because it has reached a settlement with a government enforcement agency. On the other hand, it does not require a showing of immediate, perfect compliance when the polluter and a government enforcement agency have reached a settlement that puts into place a complex remediation plan.
St. Bernard Citizens, 500 F.Supp.2d at 606. Although the Friends framework grants solicitude to state agency decisions, it also protects the ability of citizen suits to “supplement” governmental efforts to abate pollution. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Because the CAA provides a statutory guide to cases in which a diligent prosecution has taken place, I would adopt the Friends test and apply it to the facts before us.
3
A faithful application of Friends leads inexorably to the conclusion that Sierra Club was not in privity with the DEQ. The intra-agency action to which the majority would grant preclusive effect was initiated by Two Elk before the Wyoming Environmental Council, defended by the Wyoming Department of Environmental Quality, and settled through that same agency’s proceedings. My colleagues determine that, under Friends, the DEQ diligently prosecuted the action below and the 2005 Order is preclusive. But Friends adopted the statutory test in defining privity. 382 F.3d at 759. The statute requires a state to have “commenced and [be] diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order.” 42 U.S.C. § 7604(b)(1)(B) (emphasis supplied).
The Seventh Circuit did not have to consider the requirement in the CWA that the action be commenced in a court because the settlement at issue involved an adjudication before a Wisconsin state court. Friends, 382 F.3d at 750. The majority ducks the issue because it contends that it is not applying the statute. (Majority Op. 1260 n. 1.) But Friends is predicated on that statutory language. The majority’s claim that it is relying on Friends and its simultaneous disavowal of the very statutory language on which Friends is based is befuddling.
Fidelity to Friends requires a determination of whether a “judicial action is capable of requiring compliance with the Act and is calculated to do so.” 382 F.3d at 759 (quotations omitted). The DEQ’s actions fail this test. First and foremost, there was no “judicial action.” Agency decisions may have preclusive effect under certain circumstances. See Slavens v. Bd. of Cnty. Comm’r for Uinta Cnty., 854 P.2d 683, 685 (Wyo.1993) (explaining under which circumstances preclusion by an agency decision is appropriate). But the Friends approach to the CAA provides a guide to when preclusion is appropriate, and unambiguously requires adjudication in a court. “All but two of the more than thirty courts asked to rule that an administrative tribunal is a ‘court’ for the purposes of [preclusion under the CAA or similar statutes] have refused to do so.” [10] Miller, *1279 supra, at 437. Were the Wyoming Supreme Court to look to federal law, then, it would likely adopt this majority rule.
But even assuming, arguendo, that Friends permits an agency’s decision to be given preclusive effect, the DEQ’s purported enforcement actions in this case were not “diligent prosecutions” as that phrase is generally understood. Proceedings were initiated by Two Elk upon the DEQ’s notification to the company that its permit expired. At a 2007 hearing, a representative of the DEQ explained that such letters are merely notifications and not any sort of “affirmative action in terms of repealing, revoking, renewing a permit.” The DEQ’s understanding of the role of its letter as non-prosecutorial is supported by the reasoning of the Seventh Circuit — as that court noted, “writing a letter would hardly be described as commencing or prosecuting an action.” [11] Friends, 382 F.3d at 756 (quotations omitted). Because the DEQ did not prosecute at all, it could not have prosecuted diligently and the settlement is not entitled to preclusive effect under Friends.
4
For similar reasons, Sierra Club is not precluded from bringing the present action even under the approach in Green Forest. In that case, the court squarely rejected the notion that declining to sue could curry preclusive effect. Green Forest, 921 F.2d at 1406. Further, Green Forest relied heavily upon the EPA’s “preeminent role” as the enforcer of the CWA. Id. at 1404. Its conclusions do not intuitively apply in this case, in which the EPA was not involved and the settlement amounted simply to a stipulation of facts. Additionally, although Green Forest relied predominantly on the common law, there must yet be a showing that the state was granted the authority to act on behalf of its citizens’ interest. See Restatement (Second) of Judgments § 41(l)(d) (1982); Democratic Cent. Comm., 842 F.2d at 409-10. There has been no such showing.
Indeed, Sierra Club persuasively argues that the DEQ did not act in the citizen plaintiffs’ interests. There is no suggestion that Sierra Club shares any proprietary interest with Wyoming or the DEQ, which is generally required for a showing of privity. See Wyo. Med. Ctr. v. Wyo. Ins. Guar. Ass’n, 225 P.3d 1061, 1065 (Wyo.2010). The group argued vigorously that its interests do not align with the agency’s and established, based on the DEQ’s admissions, that the agency’s objectives encompass economic goals as well as environmental ones. Sierra Club emphasized that the DEQ raised, and the Council considered, matters such as the crowding out of other businesses by Two Elk’s slow or nonexistent construction process. Further the group pled below that it is a *1280 national organization, whose interests could not be fully represented by Wyoming during the proceedings before the Council.[12]
Thus, this case is unlike Karr, 475 F.3d 1192, in which the agency and the plaintiffs agreed the defendant was not compliant, but disagreed on the proper remedy to pursue. See id. at 1198. Sierra Club and the DEQ were at antipodes: one advocated prosecution and the other determined prosecution was not necessary. When courts have held a suit to be precluded by settlement or consent decree, the preclusive orders have contained “substantive provisions that on their face [were] directly designed to address” serious violations, St. Bernard Citizens, 500 F.Supp.2d at 606, or resulted in “more [compliance] than [p]laintiffs sought to achieve on their own,” Karr, 475 F.3d at 1198. However, the 2005 Order confirms a settlement in which the agency and the company simply agreed that Two Elk was compliant with its permit. The order was no more than a stipulation to certain facts. The DEQ never “prosecuted” any violations by Two Elk because it did not believe a violation was taking place. I can find no instance in the case law of such a stipulation barring a citizen suit.
II
Under Wyoming law, collateral estoppel does not apply when the proceedings sought to be estopped utilize a lower burden of proof than that utilized in the first proceeding. Elliott v. State, 247 P.3d 501, 503 (Wyo.2011); Doles v. State, 163 P.3d 819, 823 (Wyo.2007). Because of the dichotomous standards in the proceedings below, the 2009 Order cannot be preclusive.
In the state court proceeding, under a deferential substantial evidence standard, Sierra Club had the burden of showing “the agency’s conclusions were contrary to the overwhelming weight of the evidence in the record as a whole.” Goodman v. Foss, 248 P.3d 1120, 1132 (Wyo.2011) (quotation omitted). In federal court, Sierra Club would only have to show by a preponderance of the evidence that Two Elk was not in compliance with the Act. Cf. Sierra Club v. Pub. Serv. Co. of Colo., Inc., 894 F.Supp. 1455, 1458 (D.Colo.1995). There is a “significantly heavier” burden in the former case than in the latter. Elliott, 247 P.3d at 503. Just as an “acquittal on criminal charges does not prove that the defendant is [dispositively] innocent” in related civil proceedings, Doles, 163 P.3d at 823 (quotation omitted), the finding that there was substantial evidence supporting the Council’s conclusion that Two Elk continued building does not preclude Sierra Club from showing otherwise by a preponderance of the evidence.
Ill
Because I cannot concur with the majority’s understanding of federal or Wyoming law, I respectfully DISSENT.

. The majority rejects outright Sierra Club's argument that the CAA's plain language displaces common-law preclusion doctrines, relying on "[n]umerous courts” that have applied the doctrines in CAA or Clean Water Act ("CWA") cases. (Majority Op. 1263.) However, these cases assume without deciding that the common law controls the analysis. See Ellis v. Gallatin Steel Co., 390 F.3d 461, 473-74 (6th Cir.2004) (applying res judicata without considering whether the CWA might displace the common law); Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743, 757-65 (7th Cir.2004) (same); EPA v. City of Green Forest, Ark., 921 F.2d 1394, 1403-05 (8th Cir.1990) (same); Wilder v. Thomas, 854 F.2d 605, 616-21 (2d Cir.1988) (applying collateral estoppel without acknowledging the CAA might displace the common law). It is far from clear that common-law preemption survives 42 U.S.C. § 7604(b)(1)(B) intact. See Jeffrey G. Miller, Theme and Variations in Statutory Preclusions *1273 Against Successive Environmental Enforcement Actions by EPA and Citizens, 28 Harv. Envtl. L.Rev. 401, 416-25 (2004) (explaining the CAA's statutory preclusion device within the overall purpose of encouraging citizen suits).

. The majority appears to interpret Satsky and Green Forest coterminously, but they are analytically distinct, as I explain below.

. The term may also refer to the common-law concept that the state has a duty to act as a guardian of children and the mentally disabled. This is the only way in which Wyoming courts have ever used the term. See, e.g., J.J.F. v. State, 132 P.3d 170, 177 (Wyo.2006); cf. Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 600, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) (“Th[e] common-law approach, however, has relatively little to do with the concept of parens patriae standing that has developed in American law.”).

. Although parens patriae generally refers to a state suing in federal court, some courts have loosely used the term “parens patriae” when referring more generally to the state's ability to sue on behalf of its citizens. See, e.g., Friends, 382 F.3d at 759. The rationale of Friends is discussed below. For the moment, it is sufficient to point out that we cannot dispose of this case solely on the Friends definition of parens patriae, which assumes the conclusion we are trying to establish.

. The DEQ is an executive branch department, an agency under the Wyoming Administrative Procedure Act, empowered to enforce the Wyoming Environmental Quality Act. Wyo. Stat. §§ 16-3-101(b)(i), 35-11-104, -110(a). That act also establishes the Council to act as the adjudicative body for the DEQ. §§ 35-11-111,-112.

. And a later settlement discussed in the 2007 Order disclaimed any binding effect on non-parties (“[t]he rights, duties, and obligations contained in this Agreement shall operate only among [the DEQ and Two Elk]”).

. This was the basis for the DEQ’s argument that Sierra Club did not have state standing. The state court rejected this notion, concluding that Sierra Club had standing.

. Green Forest’s reliance on these precedents was questionable. For example, the court relied up on United States v. Olin Corp., 606 F.Supp. 1301, 1305 (N.D.Ala.1985), for the proposition that the federal government may have “proper parens patriae” status. Olin in turn relied upon New Jersey v. New York, 345 U.S. 369, 373, 73 S.Ct. 689, 97 L.Ed. 1081 (1953) for that proposition. 606 F.Supp. at 1305. Yet New Jersey contains no mention of the possibility that parens patriae is anything other than a doctrine of standing that may be asserted by states. 345 U.S. at 372, 73 S.Ct. 689 ("[Parens patriae] is a recognition of the principle that the state, when a party to a suit involving a matter of sovereign interest, must be deemed to represent all its citizens.” (quotations omitted)). The question of EPA’s standing in Green Forest or Olin has nothing to do with its representative capacity for citizens. When the federal government or one of its agencies brings suit, its standing is usually based on its power, defined by Congress, to redress violations of the laws of the United States. This may be in tension with courts' current understanding of Article III standing, but it is nonetheless axiomatic. See Edward A. Hartnett, The Standing of the United States: How Criminal Prosecutions Show that Standing Doctrine is Looking for Answers in all the Wrong Places, 97 Mich. L.Rev. 2239, 2247-51 (1999).

. The Wyoming Supreme Court has favorably cited the Restatement (Second) of Judgments on matters of preclusion. See, e.g., Fuentes v. Jednat, 229 P.3d 949, 951-52 (Wyo.2010).

. The two outliers are Gardeski v. Colonial Sand & Stone, Co., Inc., 501 F.Supp. 1159 (S.D.N.Y.1980) called into doubt by Friends of the Earth v. Consol. Rail Corp., 768 F.2d 57 (2nd Cir.1985), and SURCCO v. PRASA, 157 F.Supp.2d 160 (D.P.R.2001). The Third Circuit also suggested such a contrary approach, see Baughman v. Bradford Coal Co., Inc., 592 F.2d 215, 217-18 (3d Cir.1979), but has never adopted the minority rule.

. The majority points to the procedural history of this case as supporting a finding of estoppel. (Majority Op. 1269-70 (citing Slavens, 854 P.2d at 686).) It notes that Sierra Club did not even attempt to intervene prior to the 2007 hearings, and that, after filing its suit under the Wyoming Administrative Procedure Act, it withdrew its petition for certiorari with the Wyoming Supreme Court and elected to file a federal suit. (Id.) Although I agree that failure to prosecute a suit generally supports a finding of preclusion under Wyoming law, this factor is trumped by the limitations on preclusion found in the CAA and acknowledged in Friends. Sierra Club’s actions actually prove the state action was not preclusive. As Sierra Club points out, it did not intervene at first because it thought the state would diligently prosecute. It was only when it became clear the state would not diligently prosecute that Sierra Club had to step in. And the citizen plaintiffs’ decision to abandon the state court proceeding was a sound choice given that they faced a high burden of proof in those proceedings, which, as discussed infra, is different for citizen suits *1280 under the CAA and militates against a finding of preclusion.

. The majority concludes that this argument was waived. This is a strained and harsh reading of the record. Sierra Club explicitly pled that it was a national organization with members outside Wyoming. It further argued that the DEQ did not represent its interests. Sierra Club demonstrably preserved the issue of whether it was in privity with the DEQ; our waiver rules do not require a party to raise every possible sub-argument supporting its principal objection in order to preserve that position.